# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| **BUNCOMBE COUNTY, NORTH CAROLINA, individually and on behalf of all those similarly situated,** ) ) ) ) | |
| **Plaintiff,** ) ) | |
| **v.** ) ) | **Case No. 3:22-cv-00420-DCLC-DCP** |
| **TEAM HEALTH HOLDINGS, INC., AMERITEAM SERVICES, LLC, and HCFS HEALTH CARE FINANCIAL SERVICES, LLC,** ) ) ) ) ) | |
| **Respondents.** ) | |

---

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS FROM THE FIRST AMENDED COMPLAINT

---

# TABLE OF CONTENTS

I.      Nature of the Case.................................................................................................1

II.     Issues Presented ...................................................................................................2

III.    Facts .......................................................................................................................2

        A.      Parties and Plaintiff's Allegations ..........................................................2

        B.      Prior Related Litigation and Proposed Class Definitions .......................4

IV.     Standard for Decision ...........................................................................................5

V.      Argument ...............................................................................................................7

        A.      Plaintiff's Allegations Establish a Lack of Commonality and Typicality Under
                Rule 23(a)................................................................................................7

                1.      Plaintiff Fails to Allege Common Emergency Medical Encounters or
                        Common Applications of CPT Coding Guidelines ....................................9

                2.      Variations in the Alleged Fraudulent Statements, Alleged Reliance on
                        Such Statements, and the Circumstances of Each Transaction Establish
                        Lack of Commonality and Typicality .........................................................11

                3.      Prior Putative Class Representatives in Related Failed Cases Illustrate
                        the Absence of Commonality and Typicality in the Putative Classes .......14

        B.      Plaintiff's Proposed Class Cannot be Maintained Under Rule 23(b)(3)...............16

                1.      Unjust Enrichment Claims Involve Inherently Individualized Equitable
                        Considerations Not Suitable for Class Treatment.....................................17

                2.      Material Differences in State Unjust Enrichment Law Will Predominate
                        in Plaintiff's Nationwide Class ................................................................18

                3.      Individualized Patient-by-Patient Review is Required to Determine
                        Whether Defendants Upcoded a Claim......................................................20

                4.      Plaintiffs' Unjust Enrichment Theory Requires Individualized Review
                        of the Equities of Each Transaction ..........................................................21

                5.      Out-of-Network Class Members Made Inherently Individualized
                        Decisions Regarding Whether to Pay Claims and at What Rates.............22

                6.      In-Network Class Members Are Subject to Hundreds, if Not
                        Thousands, of Unique Network Participation Agreements ........................23

                7.      Class Members are Subject to Unique Geographic, Demographic, State
                        Law, and Related Factors Impacting Their Claims ..................................24

                8.      Plaintiff's Inability to Satisfy Rule 23(b)(3)'s Superiority Requirement
                        is Likewise Evident from the Face of the FAC..........................................25

        C.      Plaintiff's Proposed Class Cannot be Certified or Maintained Under Rules
                23(b)(1), 23(b)(2), or 23(c)(4) ...............................................................27

                1.      Plaintiff's Conclusory Request for Mandatory Classes Under Rules
                        23(b)(1) and 23(b)(2) is Constitutionally Impermissible..........................28

i

2.      Plaintiff Cannot Demonstrate a Risk of Inconsistent Adjudications or
        Rulings that Would Substantially Impair or Impede the Ability of
        Putative Class Members to Protect Their Interests ...................................29

3.      No Classwide Injunctive or Declaratory Relief is Available ....................30

4.      Certification is Not Appropriate as to any "Particular Issue" Under
        Rule 23(c)(4) .............................................................................................31

VI.     Conclusion ...............................................................................................................32

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Amchem Prod., Inc. v. Windsor,*
   521 U.S. 591 (1997)........................................................................................ 27

*Bearden v. Honeywell Int'l, Inc.,*
   No. 3:09-01035, 2010 WL 1223936 (M.D. Tenn. Mar. 24, 2010) .......................... 18

*Beattie v. CenturyTel, Inc.,*
   511 F.3d 554 (6th Cir. 2007) ............................................................... 9, 14, 16

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)........................................................................................ 6

*Bridge v. Phoenix Bond & Indemnity Co.,*
   553 U.S. 639 (2008)...................................................................................... 12

*Clemons v. Norton Healthcare Inc. Ret. Plan,*
   890 F.3d 254 (6th Cir. 2018) (reversing ......................................................... 30, 31

*Coleman v. Gen. Motors Acceptance Corp.,*
   296 F.3d 443 (6th Cir. 2002) ........................................................................ 28

*Colley v. Procter & Gamble Co.,*
   No. 1:16-CV-918, 2016 WL 5791658 (S.D. Ohio Oct. 4, 2016) ............................ 19

*Cowit v. CitiMortgage, Inc.,*
   No. 1:12-CV-869, 2013 WL 940466 (S.D. Ohio Mar. 8, 2013).............................. 20

*Daffin v. Ford Motor Co.,*
   458 F.3d 549 (6th Cir. 2006) ........................................................................ 8, 9

*Eades v. Chicago Title Ins. Co.,*
   No. 1:09-CV-3412-CAP, 2012 WL 13001793 (N.D. Ga. July 18, 2012) .................. 5

*Eldridge v. Cabela's Inc.,*
   3:16-CV-536-DJH, 2017 WL 4364205 (W.D. Ky. Sept. 29, 2017)......................... 7

*Emergency Med. Care Facilities P.C. v. BlueCross BlueShield of Tenn. Inc.,*
   No. W201702211COAR3CV, 2018 WL 6266529 (Tenn. Ct. App. Nov. 29, 2018)............... 23

iii

*Gen. Motors, LLC v. FCA US, LLC*,
  44 F.4th 548 (6th Cir. 2022) ................................................................. 13

*Gerboc v. ContextLogic, Inc.*,
  867 F.3d 675 (6th Cir. 2017) .......................................................... 13, 21

*Grainger v. State Sec. Life Ins. Co.*,
  547 F.2d 303 (5th Cir. 1977) ................................................................. 11

*Grandalski v. Quest Diagnostics Inc.*,
  767 F.3d 175 (3d Cir. 2014) ............................................................. 17, 22

*Heritage Equity Grp. 401(k) Sav. Plan v. Crosslin Supply Co.*,
  638 F. Supp. 2d 869 (M.D. Tenn. 2009) .............................................. 15

*Hicks v. State Farm Fire & Cas. Co.*,
  965 F.3d 452 (6th Cir. 2020) ................................................................... 8

*Homeq v. Watkins*,
  572 S.E.2d 731 (N.C. Ct. App. 2002) ................................................... 24

*In re Am. Med. Sys.*,
  75 F.3d 1069 (6th Cir. 1996) ................................................... 10, 12, 19

*In re Nat'l Prescription Opiate Litig.*,
  976 F.3d 664 (6th Cir. 2020) ............................................................. 8, 31

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
  299 F.R.D. 555 (E.D. Tenn. 2014) ....................................................... 18

*In re Telectronics Pacing Sys., Inc.*,
  221 F.3d 870 (6th Cir. 2000) ..................................................... 28, 29, 30

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*,
  722 F.3d 838 (6th Cir. 2013) ................................................................. 5, 6

*Indiana State Dist. Council of Laborers v. Omnicare, Inc.*,
  583 F.3d 935 (6th Cir. 2009) ................................................................. 11

*JPMorgan Chase Bank, N.A. v. Browning*,
  750 S.E.2d 555 (N.C. Ct. App. 2013) ................................................... 21

*Kottler v. Deutsche Bank AG*
  05 cv 7773 (PAC), 2010 WL 1221809 (S.D.N.Y. Mar. 29, 2010) ......... 19

*Lichoff v. CSX Transp., Inc.*,
  218 F.R.D. 564 (N.D. Ohio 2003) ........................................................ 12

iv

*Loreto v. Proctor & Gamble Co.*,
  No. 1:09-cv-815, 2013 WL 6055401 (S.D. Ohio Nov. 15, 2013) ................................. 6, 11, 12

*Martin v. Behr Dayton Thermal Prods. LLC*,
  896 F.3d 405 (6th Cir. 2018) ........................................................................... 31, 32

*Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*,
  577 U.S. 136 (2016) ................................................................................................ 15

*Montgomery v. Wyeth*,
  580 F.3d 455 (6th Cir. 2009) ................................................................................. 18

*Moore v. PaineWebber, Inc.*,
  306 F.3d 1247 (2d Cir. 2002) ........................................................................... 11, 12

*Nevada-Martinez v. Ahmad*,
  No. 5:15-CV-239-JMH, 2016 WL 7888046 (E.D. Ky. June 17, 2016) ................................ 23

*Nevada-Martinez*,
  2016 WL 7888046 ..................................................................................................... 26

*Norman v. Nash Johnson & Sons' Farms, Inc.*,
  537 S.E.2d 248 (N.C. Ct. App. 2000) .............................................................. 13, 17

*Oom v. Michaels Cos.*,
  No. 1:16-cv-257, 2017 WL 3048540 (W.D. Mich. July 19, 2017) ............................. 6, 17, 18

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) ................................................................................................. 28

*Pilgrim v. Universal Health Card, LLC*,
  660 F.3d 943 (6th Cir. 2011) .......................................................... 6, 7, 19, 21, 27

*Pipefitters Loc. 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*,
  654 F.3d 618 (6th Cir. 2011) ......................................... 25, 26, 27, 29, 30, 32

*Rapp v. Green Tree Servicing, LLC*,
  302 F.R.D. 505 (D. Minn. 2014) .......................................................................... 19

*Rikos v. Procter & Gamble Co.*,
  799 F.3d 497 (6th Cir. 2015) ................................................................................... 8

*Rikos v. Procter & Gamble Co.*,
  No. 1:11-cv-226, 2012 WL 641946 (S.D. Ohio Feb. 28, 2012) ................................. 6

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*,
  863 F.3d 460 (6th Cir. 2017) ..................................... 16, 20, 22, 23, 24, 25

v

*Santangelo v. Comcast Corp.*,
  2017 WL 6039903 (N.D. Ill. Dec. 6, 2017) ........................................................... 23

*Sauter v. CVS Pharmacy, Inc.*,
  No. 2:13-cv-846, 2014 WL 1814076 (S.D. Ohio May 7, 2014) ................................. 6

*Schumacher v. State Auto. Mut. Ins. Co.*,
  No. 1:13-CV-00232, 2015 WL 421688 (S.D. Ohio Feb. 2, 2015) ............................ 10, 22, 27

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*,
  806 F.3d 71 (2d Cir. 2015) .......................................................................................... 13

*Smith v. Bank of America Corp.*,
  485 F.App'x 749 (6th Cir. 2012) ................................................................................ 11

*Smith v. Cash Am. Int'l, Inc.*,
  No. 1:15-CV-00760-MRB, 2019 WL 2352921 (S.D. Ohio June 4, 2019).................. 6, 14

*Sprague v. Gen. Motors Corp.*,
  133 F.3d 388 (6th Cir. 1998) (en banc ..................................................................... 8, 9

*Stout v. J.D. Byrider*,
  228 F.3d 709 (6th Cir. 2000) ........................................................... 8, 12, 13, 14, 21

*Tarrify Properties, LLC v. Cuyahoga Cnty.*,
  37 F.4th 1101 (6th Cir. 2022) ..................................................................... 17, 20, 25

*Unitedhealthcare v. Team Health Holdings, Inc.*,
  21CV00364DCLCJEM, 2022 WL 1481171 (E.D. Tenn. May 10, 2022) .................. 27

*Vega v. T-Mobile USA, Inc.*,
  564 F.3d 1256 (11th Cir. 2009) ................................................................................. 17

*Wall v. Mich. Rental*,
  852 F.3d 492 (6th Cir. 2017) ..................................................................................... 11

*Wallace v. Midwest Fin. & Mortg. Servs., Inc.*,
  714 F.3d 414 (6th Cir. 2013) ................................................................................ 12, 13

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ..................................................................... 5, 8, 9, 10, 29, 30

*Williams v. Williams*,
  323 S.E.2d 463 (N.C. Ct. App. 1984) ....................................................................... 21

*Wright v. Wright*,
  289 S.E.2d 347 (N.C. 1982) ....................................................................................... 21

vi

*Young v. Nationwide Mut. Ins. Co.*,
   693 F.3d 532 (6th Cir. 2012) ............................................................... 7, 17, 25, 26

**Statutes**

18 U.S.C. § 1964(c) ................................................................................................. 13

29 U.S.C. § 1132(a)(3) ............................................................................................. 15

N.C. Gen. Stat. Ann. § 58-3-225 ............................................................................ 19

**Rules**

Fed. R. Civ. P. 5 ...................................................................................................... 33

Fed. R. Civ. P. 23 ............................................................................................... passim

Fed. R. Civ. P. 23(a)(1)–(4) ...................................................................................... 7

Fed. R. Civ. P. 23(c)(1)(A) ........................................................................................ 5

Fed. R. Civ. P. 23(d)(1)(D) ........................................................................................ 5

Fed. R. Civ. P. 23(a) ............................................................................................... 2, 7

Fed. R. Civ. P. 23(a), and (2) .................................................................................... 7

Fed. R. Civ. P. 23(b) ................................................................................................... 7

Fed. R. Civ. P. 23(b)(3) .......................................................................................... 2, 7

Fed. R. Civ. P. 23(b)(1), 23(b)(2), and 23(c)(4) ...................................................... 7

Fed. R. Civ. P. 23(b)(1), 23(b)(2), or 23(c)(4) ......................................................... 2

**Other Authorities**

1 *McLaughlin on Class Actions* § 5:60 .................................................................. 19

Restatement (Second) of Conflict of Laws § 221 ................................................... 18

# I.    Nature of the Case

This lawsuit is one of many recent attempts by a core group of attorneys to bring class-action litigation against TeamHealth Holdings, Inc. ("THHI"), AmeriTeam Services, LLC ("AmeriTeam"), and HCFS Health Care Financial Services, LLC ("HCFS") based on the same conclusory allegation of a fraudulent nationwide upcoding scheme.  As in the previously dismissed cases, Plaintiff has not and cannot satisfy the requirements necessary to justify a departure from the general rule that litigation proceed exclusively on behalf of the named parties.  In this case, as in the others, the putative class is uncertifiable and representative litigation under Rule 23 of the Federal Rules of Civil Procedure would be unmanageable.

Proving Plaintiff's own claims for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and unjust enrichment will require a tedious patient-by-patient analysis of each of the emergency department ("ED") encounters and the resulting claims that Defendants submitted to Plaintiff's third-party administrator for payment.  Completing this arduous task in Plaintiff's case will not advance the litigation as to any other class member. Instead, the Court and the Parties will have to engage in an individualized analysis of millions of claims to determine the allegedly fraudulent statement and intent associated with each, whether the class member or an agent justifiably relied on the statement, and whether the entirety of the circumstances surrounding each claim render it unjust for Defendants to retain the benefit received in each case.  Answers to these patient-by-patient inquiries will likely differ drastically even across the multitude of claims associated with any specific class member, and these differences will be compounded across the thousands of uniquely-situated proposed class members.  This is simply not a case that is appropriate for class certification.

1

Because these problems are apparent from the face of the First Amended Complaint ("FAC"), this Court need not wait to dismiss the class allegations. Indeed, this Court can and should strike these allegations at this juncture of litigation—before the Parties' and Court's resources are expended attempting to certify a class under legal theories that are fundamentally incompatible with Rule 23.

## II.    Issues Presented

1.    Whether Plaintiff can satisfy Rule 23(a)'s commonality and typicality requirements where each class member's claims for violation of RICO and unjust enrichment depend on individualized assessments of unique factual and equitable circumstances as to each medical claim at issue.

2.    Whether Plaintiff can satisfy Rule 23(b)(3)'s predominance and superiority requirements where unjust enrichment is inherently unsuitable for representative litigation, materially different state laws will apply to class members, trying Plaintiff's claims on a class-wide basis would require individually considering millions of unique claims, contracts, and policies, and class members have demonstrated their ability to litigate on an individual basis.

3.    Whether Plaintiff's proposed damages class can be certified and maintained under Rules 23(b)(1), 23(b)(2), or 23(c)(4) where the Constitution forbids certifying mandatory classes involving individualized damages awards, there is no risk of inconsistent adjudications impeding class members' ability to protect their interests, class-wide injunctive or declaratory relief is unavailable, and common questions do not predominate.

## III.    Facts

### A.    Parties and Plaintiff's Allegations

The Parties and allegations set out in the FAC are described in detail in Defendants' Memorandum in Support of their Motion to Dismiss the FAC, and Defendants incorporate those descriptions into this motion. (*See* Doc. 35). Plaintiff alleges that it sponsors and funds the Buncombe County Government Group Health Plan ("Plan"). (FAC ¶ 1). Blue Cross Blue Shield of North Carolina ("BCBSNC") served as the third-party administrator ("TPA") for the Plan. (*Id.* ¶ 17). Plaintiff alleges that Defendants engaged in a nationwide "upcoding" scheme to defraud

Plaintiff and thousands of other putative class members into paying Defendants higher-than-appropriate amounts for ED services. (*Id.* ¶¶ 13, 14).

According to Plaintiff, a "claim-by-claim expert analysis [is] required to allege specific examples of" Defendants' fraud. (*See* Doc. 1 ¶ 1 n.1). The FAC includes five examples in which an undisclosed expert, retained for litigation, allegedly determined that "the patient encounter did not meet the criteria required to support the [Current Procedural Terminology ("CPT")] codes billed by TeamHealth." (FAC ¶ 3). But the FAC does not provide any further explanation as to how or why the expert reached that opinion under the applicable American Medical Association ("AMA") guidelines for CPT coding. Instead, Plaintiff continues to rely on unproven allegations made in other lawsuits, unwarranted inferences derived from aggregate claims data from a single year, and a gross misinterpretation of Centers for Medicare & Medicaid Services ("CMS") guidance regarding the expected distribution of ED codes nationally and locally. (*Id.* ¶¶ 94-95, 96, 99).

Plaintiff's scattershot theory of fraud is untethered to any particular type of medical condition, procedure, or test: according to Plaintiff, Defendants may have upcoded any claim related to any medical treatment rendered in any emergency department. At the same time, Plaintiff has acknowledged that many of Defendants' claims were ***not*** upcoded. For example, Plaintiff has previously suggested that "more likely than not, ***most*** of" the claims Defendants coded as 99285 ("level 5") were upcoded. (Doc. 1 ¶ 94). These allegations lack commonality and typicality and would require individualized review to establish liability across the putative class.

3

## B. Prior Related Litigation and Proposed Class Definitions

Plaintiff's FAC is the eighth of nine attempts by Plaintiff's counsel to state putative class claims against Defendants. Over the course of counsel's attempts to assert such claims, they have proposed the following different class definitions:

| Case/Complaint | Proposed Class(es) |
|---|---|
| *Gerry Wood*, No. 3:21-cv-00441 (filed 06/05/21) (M.D. Tenn.) | All self-funded payors that compensated THHI or an entity billing on its behalf for medical treatment in the United States or its territories during the four years prior to the filing of the Complaint in this action. |
| *LMRMA*, No. 3:22-cv-00104 (Filed 03/21/22 and reflected in original, first amended, and second amended complaint) (E.D. Tenn.) | All self-funded plans and payors that compensated THHI or an entity billing on its behalf for medical treatment in the United States or its territories during the four years prior to the filing of the Complaint in this action. |
| *LMRMA*, No. 3:22-cv-00104 (Motion to Amend Class Definition filed 07/08/22) (E.D. Tenn.) | All self-funded plans and other nongovernmental payors that compensated THHI or an entity billing on its behalf for medical treatment in the United States or its territories during the four years prior to the filing of the Complaint in this action. |
| *Buncombe*, No. 3:22-cv-00420 (filed 11/22/22) (E.D. Tenn.) | **Unjust Enrichment Class**: All plans and payors that compensated THHI or any THHI affiliate or entity billing on its behalf for ED medical services in the United States or its territories from January 1, 2017 until present. |
| *Risk Management Inc.*, No. 3:22-cv-00456 (filed 12/20/22) (E.D. Tenn.)<br><br>FAC filed 03/13/23 | **RICO Class**: All payors or their assignees that compensated THHI or an entity billing on its behalf for medical treatment in the United States or its territories during the four years prior to the filing of the Complaint in this action.<br><br>**Unjust Enrichment Class**: All payors or their assignees that compensated THHI or an entity billing on its behalf for medical treatment in the United States or its territories during the three years prior to the filing of the Complaint in this action.<br><br>**Declaratory Judgment Class**: All payors or their assignees that compensated THHI or an entity billing on its behalf for medical treatment in the United States or its territories at any time prior to the filing of the Complaint in this action.<br><br>United States governmental programs including Medicare, Medicaid and Tricare are excluded as class members. |
| *Buncombe*, No. 3:22-cv-00420 (filed 02/20/23) (E.D. Tenn.) | **Unjust Enrichment Class**: All payors or their assignees that compensated TeamHealth or an entity billing on its behalf for |

4

| | medical services in the United States or its territories during the appropriate statute of limitations of period. |
| --- | --- |
| | **RICO Class**: All payors or their assignees that compensated TeamHealth or an entity billing on its behalf for medical treatment in the United States or its territories during the appropriate statute of limitations of period. |
| | **Declaratory Judgment Class**: All payors or their assignees that compensated TeamHealth or an entity billing on its behalf for medical treatment in the United States or its territories at any time prior to the filing of the Complaint in this action. |
| | United States governmental programs including Medicare, Medicaid, CHIP and Tricare are excluded as class members. |

"The repeated attempts by the plaintiff to define a class demonstrates that this action is ill-suited to proceed as a class." *Eades v. Chi. Title Ins. Co.*, No. 1:09-CV-3412-CAP, 2012 WL 13001793, at *3 (N.D. Ga. July 18, 2012). Moreover, as set out below, the circumstances surrounding the dismissal of the prior cases illustrate how individualized issues would overwhelm any common ones in the litigation of the Parties' claims and defenses.

## IV.     Standard for Decision

The evaluation of whether a lawsuit is suitable for representative litigation "must begin . . . with a recognition that the 'class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013) (internal quotation marks omitted) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011)). "At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A); *see also* Fed. R. Civ. P. 23(d)(1)(D) (a court may issue orders that "require that the pleadings be amended to eliminate

5

allegations about representation of absent persons and that the action proceed accordingly"). The Court has "broad discretion to decide whether to certify a class." *Whirlpool*, 722 F.3d at 850.

A motion to strike class allegations is an appropriate mechanism to determine whether a case may proceed as a class action, and such a motion may be granted prior to discovery or the filing of a motion for class certification by a plaintiff. *See Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946-49 (6th Cir. 2011) (affirming the district court's striking of class allegations); *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-cv-846, 2014 WL 1814076, at *8 (S.D. Ohio May 7, 2014) ("Courts in the Sixth Circuit have permitted the use of motions to strike class allegations prior to discovery."). "Striking deficient class allegations comports with Rule 23's directive that courts determine whether a class may be certified '[a]t an early practicable time.'" *Smith v. Cash Am. Int'l, Inc.*, No. 1:15-CV-00760-MRB, 2019 WL 2352921, at *2 (S.D. Ohio June 4, 2019).[1]

"When the defendant challenges class certification based solely on the allegations of the complaint, the standard is the same as applied in deciding a motion to dismiss under Rule 12(b)(6)." *Oom v. Michaels Cos.*, No. 1:16-cv-257, 2017 WL 3048540, at *3 (W.D. Mich. July 19, 2017). "As such, the complaint must contain 'factual allegations . . . enough to raise a right to [class certification] above the speculative level . . . on the assumption that all the allegations in the complaint are true.'" *Id.* (alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). As explained in detail below, Plaintiff cannot meet that standard here.

---

[1] *See, e.g.*, *Loreto v. Proctor & Gamble Co.*, No. 1:09-cv-815, 2013 WL 6055401, at *2-3 (S.D. Ohio Nov. 15, 2013) (striking class allegations where the proposed class lacked Article III standing, was overbroad, and was predominated by individual issues because "further discovery and briefing on the certification issue would simply postpone the inevitable conclusion that the putative class cannot be certified"); *Rikos v. Proctor & Gamble Co.*, No. 1:11-cv-226, 2012 WL 641946, at *5 (S.D. Ohio Feb. 28, 2012) ("Either party may freely move for resolution of the class-certification question at any stage of the proceedings, and the class action allegations may be stricken prior to a motion for class certification where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met.").

6

## V.    Argument

"To obtain class certification, a claimant must satisfy two sets of requirements: (1) each of the four prerequisites under Rule 23(a), and (2) the prerequisites of one of the three types of class actions provided for by Rule 23(b).  A failure on either front dooms the class."  *Pilgrim*, 660 F.3d at 945-46; *Eldridge v. Cabela's Inc.*, 3:16-CV-536-DJH, 2017 WL 4364205, at *7 (W.D. Ky. Sept. 29, 2017).  Under Rule 23(a), a plaintiff must establish that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  Plaintiff alleges here that the class is maintainable under Rule 23(b)(3), (FAC ¶ 120), which requires demonstration that the "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Plaintiff also includes alternative conclusory allegations that a class action can be maintained under Rules 23(b)(1), 23(b)(2), and 23(c)(4).

Because the class allegations in the FAC are incurably deficient, they should be stricken.

### A.    Plaintiff's Allegations Establish a Lack of Commonality and Typicality Under Rule 23(a)

Commonality and typicality "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542 (6th Cir. 2012) (citation omitted).  Whether these requirements can be satisfied depends on how a

7

trial on the merits of the proposed class action would be conducted if the class was certified.  *See In re Nat'l Prescription Opiate Litig.*, 976 F.3d 664, 674 (6th Cir. 2020).

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015).  To do so, the claims of all class members "must depend upon a common contention[,]" and "[t]hat common contention . . . must be of such a nature that . . . determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.  The commonality requirement operates this way because it serves to determine whether class-wide proceedings will "generate common answers apt to drive the resolution of the litigation." *Id.*; *see, e.g.*, *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 459 (6th Cir. 2020) (all class members alleged injury flowing from breach of the same standard form contract); *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (all class members alleged injury from the same throttle body and the same warranty contract).  The commonality requirement ***is not satisfied*** when each class member suffers a unique injury that is not amenable to common proof.  *See Dukes*, 564 U.S. at 350-60 (holding that commonality was not satisfied where class members sought to litigate the legality of "millions of employment decisions at once" without establishing that the legality of such decisions could be resolved in "one stroke"); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397-98 (6th Cir. 1998) (en banc) (holding that commonality was lacking because determining whether each class member was injured by defendant's conduct "depended upon facts and circumstances peculiar to [each] plaintiff")

"The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague*, 133 F.3d at 399; *accord Stout*, 228 F.3d at 717.  As such, the typicality requirement is satisfied when advancing the claims of the named plaintiff

8

will simultaneously advance those of every other class member. *See, e.g.*, *Daffin*, 458 F.3d at 552–53 (concluding that typicality was satisfied because proving that the named plaintiffs' throttle bodies were defective would simultaneously prove the same as to every unnamed class member). Conversely, "[t]he typicality requirement is *not* satisfied when a plaintiff can prove his own claim but not 'necessarily have proved anybody[] else's claim.'" *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (emphasis added) (quoting *Sprague*, 133 F.3d at 399).

### 1. Plaintiff Fails to Allege Common Emergency Medical Encounters or Common Applications of CPT Coding Guidelines

Plaintiff contends that the putative class suffered a common injury because Defendants engaged in a standard, systematic, or uniform upcoding scheme. (FAC ¶ 118). But unlike in the cases where commonality is present, answering Plaintiff's suggested questions in the affirmative will not determine, "in one stroke," whether all class members have been injured. *Dukes*, 564 U.S. at 350. That is because Plaintiff does not allege a common way in which Defendants misapplied CPT codes. *See id.* at 355 (emphasizing that the class members failed to articulate a company-wide policy affecting all putative class members). Nor could Plaintiff. Defendants' physicians are required by law to treat anyone who presents in an emergency room, resulting in thousands upon thousands of unique medical fact patterns. Plaintiff's own representative examples include one patient with intermittent palpitations; one with shortness of breath and asthma; one with abdominal pain, urinary frequency, and white blood cells in her urine; one with thrombocytopenia (low platelet count); and one with chest pain. (FAC ¶ 107). The only commonality between these patients is the conclusory allegation that Defendants charged more than they should have. *See Sprague*, 133 F.3d at 398 ("Given these myriad variations . . , it seems to us that the plaintiffs' claims clearly lacked commonality." (citation omitted)).

9

Plaintiff's theory is that Defendants engaged in fraud by misapplying professional guidance on CPT coding published by the AMA. (FAC ¶ 3). As Plaintiff admits, the AMA CPT guidelines include three key components: (1) the patient's history; (2) examination; and (3) the level of medical decision making involved. (*Id.*). Each of these three key components are subject to numerous subcomponents:

- A patient's history may include personal, family, and social history and descriptions of location, quality, severity, timing, context, modifying factors, and associated signs and symptoms. The extent of history is dependent upon clinical judgment and the nature of the presenting problem(s).

- The nature of a presenting problem may be minimal, self-limited, low severity, moderate severity, or high severity, leading to examinations that may be categorized as problem focused, expanded problem focused, detailed, or comprehensive.

- Medical decision making can be categorized as straightforward, low complexity, moderate complexity, and high complexity. Determining which category the decision making falls into requires analysis of the number of diagnoses and/or management options that must be considered, the amount and/or complexity of medical records, diagnostic tests, and other information that must be analyzed, and the risk of significant complications, morbidity, and comorbidities associated with the patient's presenting problem(s), the diagnostic procedure(s), and/or the possible management options.

(*See* Doc. 35, pp. 12-13).

Because Defendants are not alleged to have misapplied these complex and subjective guidelines in any specific and uniform way, representative litigation is inappropriate. *See Dukes*, 564 U.S. at 350-60. Discovery cannot cure this defect because Plaintiff's theory of harm necessarily depends on individually assessing the voluminous factors impacting CPT coding for each patient, an exercise that cannot be performed in *en masse*. *See In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1081 (6th Cir. 1996); *Schumacher v. State Auto. Mut. Ins. Co.*, No. 1:13-CV-00232, 2015 WL 421688, at *4-8 (S.D. Ohio Feb. 2, 2015) (granting motion to strike class allegations, concluding that "inherently individualized" inquiries precluded commonality).

2.     **Variations in the Alleged Fraudulent Statements, Alleged Reliance on Such Statements, and the Circumstances of Each Transaction Establish Lack of Commonality and Typicality**

Commonality and typicality are similarly absent because the alleged misrepresentations are variable. To establish liability for RICO fraud, each class member must particularly allege "the time, place, and content of [each] alleged misrepresentation" by TeamHealth. *Wall v. Mich. Rental*, 852 F.3d 492, 496 (6th Cir. 2017). The same requirement applies where, as here, every class member seeks to establish unjust enrichment predicated upon fraud. *See Indiana State Dist. Council of Laborers v. Omnicare, Inc.*, 583 F.3d 935, 948 (6th Cir. 2009); *Smith v. Bank of America Corp.*, 485 F.App'x 749, 755 (6th Cir. 2012). While class-wide litigation is possible in cases where all class members received the same alleged misrepresentation, it is unthinkable in cases where each class member's claims for RICO violations and unjust enrichment ***involve different alleged misrepresentations***. *See Grainger v. State Sec. Life Ins. Co.*, 547 F.2d 303, 307 (5th Cir. 1977). "Where there are material variations in the nature of the misrepresentations made to each member of the proposed class, . . class certification is improper because plaintiffs will need to submit proof of the statements made to each plaintiff, [and] the nature of the varying material misrepresentations, . . in order to sustain their claims." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002); *Loreto*, 2013 WL 6055401, at *5 (striking class allegations and holding, "Typicality requires, at a bare minimum, that all class members were 'exposed' *to the same allegedly false statements*." (emphasis added)).

The FAC includes five representative claims: four level 5s that Plaintiff says should have been level 4s, and one level 4 that Plaintiff says should have been a level 2. (FAC ¶ 107). Plaintiff does not allege uniform misrepresentations across similar treatments, procedures, or tests. Instead, the representative claims arise from materially different medical conditions and treatments with

the only common thread being Plaintiff's conclusory assertions, following their expert's case-by-case review, that Defendants engaged in upcoding in five cases. (*Id.*).

For each representative claim, Plaintiff will have to present evidence as to why, in Plaintiff's view, the assigned coding level is fraudulent under the CPT coding guidelines. *See Am. Med. Sys.*, 75 F.3d at 1081 ("[E]ach plaintiff's urologist would also be required to testify to determine what oral and written statements were made to the physician . . ."). Such inquiry is necessarily individualized, and Plaintiff's commonality problem is therefore incurable, because—according to the FAC—the purported fraud of which Plaintiff complains can only be detected through claim-by-claim examination as to each class member, including review of each patient's medical chart. (*See* FAC ¶ 107); *see Lichoff v. CSX Transp., Inc.*, 218 F.R.D. 564, 571 (N.D. Ohio 2003) ("[W]here there are 'material variations in the nature of the misrepresentations made to each member of the proposed class,' certification is improper." (quoting *Moore*, 306 F.3d at 1253)). Courts within the Sixth Circuit have properly stricken class allegations when "there is no actionable representation that was uniformly communicated to all or most putative class members." *Loreto v. Procter & Gamble Co.*, No. 1:09-CV-815, 2013 WL 6055401, at *5 (S.D. Ohio Nov. 15, 2013).

Commonality and typicality are also lacking as to reliance, an element of RICO proximate-cause analysis for each putative class member. *See Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 658 (2008) ("In most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the misrepresentation."); *Wallace v. Midwest Fin. & Mortg. Servs., Inc.*, 714 F.3d 414, 419 (6th Cir. 2013) ("[P]roximate cause is an essential ingredient of any civil RICO claim."). "[A] fraud class action cannot be certified when individual reliance will be an issue." *Stout v. J.D. Byrider*, 228 F.3d 709, 718 (6th Cir. 2000) (alteration in original).

To prove that each class member was injured "by reason of" TeamHealth's alleged misrepresentations, Plaintiff will have to individually prove the causal chain between each medical bill and each submission of payment. 18 U.S.C. § 1964(c); *see Gen. Motors, LLC v. FCA US, LLC*, 44 F.4th 548, 560 (6th Cir. 2022) (describing RICO proximate cause); *Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, 806 F.3d 71, 87 (2d Cir. 2015) ("[T]he plaintiffs' theory of injury in most RICO mail-fraud cases will . . . depend on establishing that someone . . . relied on the defendant's misrepresentation." (citations omitted)). According to Plaintiff, some members of the putative class processed claims automatically without reviewing or relying on the medical records substantiating each claim. (FAC ¶ 59.) Class members that did receive medical records will face similar individual inquiries into why they failed to notice any discrepancies they now allege to exist between those records and Defendants' coding. Because Defendants will argue a lack of proximate cause as to class members who reviewed relevant records and paid anyway—or who, like Plaintiff, passed up the opportunity to do so—commonality and typicality are incurably unsatisfied. *See Stout*, 228 F.3d at 718; *Wallace*, 714 F.3d at 419.

As to unjust enrichment, each class member would need to separately establish that it has standing to assert claims on behalf of any plan members, that it has exhausted administrative remedies, that payment exceeded the reasonable value of the attendant services, that unjust enrichment liability is not precluded by the presence of express contracts, and that it would be unjust for Defendants to retain the benefit. *See Norman v. Nash Johnson & Sons' Farms, Inc.*, 537 S.E.2d 248, 266 (N.C. Ct. App. 2000). What may constitute unjust enrichment as to one class member may be a standard business transaction as to another, based on the unique circumstances surrounding each emergency room presentation and each payor's actions in reviewing and deciding how to reimburse the claim. *See Gerboc v. ContextLogic, Inc.*, 867 F.3d 675, 679 (6th

13

Cir. 2017) ("ContextLogic was not unjustly enriched: Gerboc got what he paid for.").  Because proving unjust enrichment as to Plaintiff has no bearing on whether TeamHealth was unjustly enriched as to another class member, Plaintiff cannot be typical of the class members.  *See Beattie*, 511 F.3d at 561; *Smith*, 2019 WL 2352921.

> ### 3. Prior Putative Class Representatives in Related Failed Cases Illustrate the Absence of Commonality and Typicality in the Putative Classes

Plaintiff is a municipal county in North Carolina and "the plan sponsor, plan administrator, and funder of the self-funded Buncombe County Government Group Health Plan."  (FAC ¶ 1). Yet Plaintiff does not seek to represent a class of similarly situated plan sponsors, administrators, and funders of self-funded municipal plans.  *See Stout*, 228 F.3d at 717 (emphasizing discrepancies between the named plaintiffs and the putative class members).  Plaintiff instead seeks to represent three classes, each consisting of "[a]ll payors or their assignees that compensated TeamHealth or an entity billing on its behalf for medical services[2] in the United States or its territories during the appropriate statute of limitations of period."  (FAC ¶ 113).

Plaintiff's proposed classes are incredibly and impermissibly broad.  They would include any private entity, municipal entity, and individual that compensated Defendants or their affiliates for *any* medical services, not just ED services.[3]  The proposed classes would include self-funded plans, fully-insured plans, plans that engage a TPA to review and pay claims (like Plaintiff), plans that don't, plans governed by ERISA, and, like Buncombe County, plans that are not subject to

---

[2] TeamHealth has multiple lines of business in addition to emergency medicine, including hospitalist, anesthesia, post-acute care, and urgent care.  Apparently, and improperly, payors for any of these would be lumped into the class.  Plaintiff's FAC provides absolutely no factual basis for including non-emergency medicine claims in the putative class.

[3] *Black's Law Dictionary* defines "payor"—undefined in the FAC—as "Someone who pays." *Payor*, *Black's Law Dictionary* (11th ed. 2019).

14

ERISA.  Prior failed attempts to assert similar claims on behalf of other representative plaintiffs

illustrate the atypicality inherent in such a broad span of claims:

- Counsel filed the *Gerry Wood* case on behalf of an automobile dealership and its ERISA-governed and self-funded employee benefits plan.  *See Gerry Wood Auto. LLC Emp. Benefits Plan, et al. v. Team Health Holdings, Inc., et al.*, No. 3:21-cv-00441 (M.D. Tenn. June 7, 2021).  Because the dealership's plan was not governed by ERISA, individualized review of plan language and the circumstances of each claim would have been required to determine whether each ERISA-governed plan fiduciary had standing to pursue recovery of overpayments on behalf of plans, whether ERISA preempts each claim for unjust enrichment, and whether each class member could assert an equitable claim under 29 U.S.C. § 1132(a)(3).[4]  In any event, counsel dismissed the *Gerry Wood* complaint after Defendants pointed out that they had no record of **any claim** (let alone a fraudulent one) paid by the Gerry Wood Automotive Employee Benefits Plan.  The fact that counsel's first hand-picked class representative ended up not even having an arguable claim against Defendants demonstrates the necessity of individualized plaintiff-by-plaintiff review.

- Counsel next filed a putative class action on behalf of the Louisiana Municipal Risk Management Agency ("LMRMA") with allegations recycled from *Gerry Wood.  See LMRMA v. Team Health Holdings, Inc., et al.*, No. 22-cv-00104 (E.D. Tenn. Mar. 21, 2022), Doc. 1.  LMRMA alleged that it administered a pooled fund to pay workers compensation claims (not health insurance claims, as in *Gerry Wood*) on behalf of its municipal members.  But the Court dismissed those claims after concluding that LMRMA lacked standing.  *Id.*, Doc. 45.  LMRMA's alleged status as a "payor"—the same designation centering Plaintiff's class definition in this case—was irrelevant, the Court determined.  *Id.* at 4, 9.  What mattered was whether LMRMA suffered concrete harm; individualized analysis of LMRMA's unique status under Louisiana law showed that it did not, and that any claim would belong to its municipal members.  *Id.* at 8-9.  The Court noted that unlike ERISA-governed plan administrators, who are fiduciaries of plan participants as a matter of law and typically have unique written agreements addressing recovery of overpayments on their behalf, LMRMA had failed to allege that it acted as a fiduciary for each of its municipal members.  *Id.* at 9.  As in *LMRMA*, individualized review would be required in this case to determine whether each unique payor had standing to pursue its claims on behalf of plan participants, whether the payor had ERISA-governed fiduciary duties on behalf of participants, whether the payor had

---

[4] *See, e.g.*, *Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 142 (2016); *Heritage Equity Grp. 401(k) Sav. Plan v. Crosslin Supply Co.*, 638 F. Supp. 2d 869, 875 (M.D. Tenn. 2009) (holding that ERISA § 502(a)(3) preempted a state law claim for unjust enrichment).

15

written agreements governing its obligations as to participants, and what rights and remedies are set out in such agreements.

- After filing this case, counsel filed yet another putative class action against Defendants based on the same core allegations in the dismissed *LMRMA* case. Instead of filing on behalf of "the local governments that contribute to the self-insurance fund that LMRMA administers"—the entities this Court held would have suffered an injury, if there were one—counsel filed the suit on behalf of an alleged LMRMA affiliate named Risk Management, Inc. ("RMI"). *RMI v. Team Health Holdings, Inc.*, No. 3:22-cv-00456 (E.D. Tenn. Dec. 20, 2022), Doc. 1. In an attempt to avoid the same standing problems that doomed LMRMA's claims, RMI alleges that an unspecified number of municipal members of LMRMA assigned RMI those members' claims. Counsel obtained those assignments shortly after LMRMA's dismissal for the specific purpose of allowing them to pursue litigation (*e.g.*, not in the ordinary course of dealing between RMI and the municipalities). *See id.* ¶ 24. Of course, individualized analysis of each assignment would be required to determine its validity and impact on RMI's ability to serve as a representative plaintiff on behalf of LMRMA's unique municipal members. For example, it appears that at least some of the municipalities may have assigned their causes of action without going through state-mandated procedures. The fact that RMI obtained assignments for the purpose of filing its class action also indicates that it did not have a contractual or statutory basis for filing absent such assignments and highlights the need for individualized review of each similarly-situated putative class member to determine each member's ability to represent the interests of similar plan participants.

Each of the hand-picked class representatives in these cases has had unique problems impacting the merits of their substantive claims and their ability to serve as class representatives. These problems are endemic to the proposed kitchen sink class. And because each claim paid by each class member is unique, proving improper coding as to certain claims paid by Plaintiff will not advance the litigation as to any other claim, let alone any other class member. *See Beattie*, 511 F.3d at 561.

## B. Plaintiff's Proposed Class Cannot be Maintained Under Rule 23(b)(3)

For a plaintiff to proceed with a class action under Rule 23(b)(3), "'questions of law or fact common to class members [must] predominate over any questions affecting only individual members' and class treatment must be 'superior to other available methods.'" *Sandusky Wellness*

16

*Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017) (quoting Fed. R. Civ. P. 23(b)(3)). "To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Young*, 693 F.3d at 544 (citation omitted). "[W]hen a controlling issue requires individualized determinations ill-equipped for classwide proof," establishing predominance becomes exceedingly difficult. *Tarrify Properties, LLC v. Cuyahoga Cnty.*, 37 F.4th 1101, 1106 (6th Cir. 2022). Such is the case here.

### 1. Unjust Enrichment Claims Involve Inherently Individualized Equitable Considerations Not Suitable for Class Treatment

"[C]ommon questions will rarely, if ever, predominate an unjust enrichment claim, the resolution of which turns on individualized facts." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009). This predominance problem stems from the fact that "before it can grant relief on [unjust enrichment], a court must examine the particular circumstances of an individual case and assure itself that, without a remedy, inequity would result or persist." *Id.*; *accord Norman*, 537 S.E.2d at 266. These "individual inquiries" overwhelm any common questions, making unjust enrichment claims generally "incompatible with representative litigation." *Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 185 (3d Cir. 2014).

Courts within the Sixth Circuit recognize as much. In *Oom v. Michaels Companies*, the Western District of Michigan granted the defendants' motion to strike the plaintiffs' class allegations because, *inter alia*, "given the individualized nature of" the plaintiffs' claims, one of which was unjust enrichment, the pleadings established that the plaintiffs could not satisfy Rule 23's commonality and predominance requirements. 2017 WL 3048540, at *7. The named plaintiffs in *Oom* alleged "that they paid for custom-framing services for 25 pieces of artwork from a Michaels store," but they "received lesser-value framing that damaged their art." *Id.* at *1.

17

Holding that such claims were not "subject to common proof," the court emphasized that if the plaintiffs "prove one of their claims regarding a piece of artwork, that would not necessarily prove their 24 remaining claims, let alone anyone else's in the proposed class." *Id.* at *6 (citation omitted). The court further noted that, even if common questions were identified, "highly-individualized" inquiries would predominate because, for each plaintiff who purchased the top-tier framing, the court would have to examine whether each frame received was commensurate with the payment provided for that frame or whether a disparity existed between the purchase price and the frame delivered. *Id.* at *7. As a result of these issues and those related to other Rule 23 requirements, the court struck the class allegations from the complaint. *Id.*; *accord Bearden v. Honeywell Int'l, Inc.*, No. 3:09-01035, 2010 WL 1223936, at *11 (M.D. Tenn. Mar. 24, 2010) ("Because it is apparent from the face of the Complaint that individual issues will predominate the resolution of the unjust enrichment claim, the court will strike the plaintiffs' class allegations.").

### 2. Material Differences in State Unjust Enrichment Law Will Predominate in Plaintiff's Nationwide Class

Plaintiff proposes a nationwide unjust enrichment class. (FAC ¶¶ 113a.-14, 173-84). Tennessee follows the "most significant relationship" approach to choice-of-law questions. *Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009). North Carolina is presumably the state with the most significant relationship to the alleged unjust enrichment for Plaintiff because it is domiciled in North Carolina, the ED services for which Plaintiff compensated Defendants were provided in North Carolina, and the insurance claims associated with those services were paid in that state. *See* Restatement (Second) of Conflict of Laws § 221.

As with Plaintiff, the "most significant relationship" test is likely to point to each putative class member's home state, resulting in the application of variable state law. *In re Skelaxin (Metaxalone) Antitrust Litig.*, 299 F.R.D. 555, 589 (E.D. Tenn. 2014) ("[U]njust enrichment claims

. . . vary state-by-state.").  Material differences include "how 'unjust' the retention of a benefit must be for an unjust-enrichment claim to succeed; whether the defendant must have received the unjust benefit directly from the plaintiff; . . . whether the applicable statute of limitations begins to run on occurrence or discovery of the injury; and whether and to what extent equitable tolling may save an unjust-enrichment claim that would otherwise be time barred."  *Rapp v. Green Tree Servicing, LLC*, 302 F.R.D. 505, 519 (D. Minn. 2014).  Additionally, "Some states do not recognize unjust enrichment as an independent cause of action, and many states require a plaintiff to demonstrate that he lacks an adequate remedy at law to bring an unjust enrichment claim." *Colley v. Procter & Gamble Co.*, No. 1:16-CV-918, 2016 WL 5791658, at *7 (S.D. Ohio Oct. 4, 2016) (collecting case law from various states).  As such, "variations in state law have generally precluded nationwide class certifications based on unjust enrichment theories." *Kottler v. Deutsche Bank AG*, 05 cv 7773 (PAC), 2010 WL 1221809, at *4 (S.D.N.Y. Mar. 29, 2010); *see also* 1 *McLaughlin on Class Actions* § 5:60 (19th ed. 2022).[5]

In *Pilgrim*, the Court of Appeals affirmed the district court's decision to strike class allegations where application of Ohio's "most significant relationship" test would result in the application of numerous and materially different state consumer protection laws.  660 F.3d at 947.  The same reasoning supports striking the class allegations in this case.  *See id.* at 948-50; *accord Am. Med. Sys.*, 75 F.3d at 1085 ("If more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law, yet another reason why class certification would not be the appropriate course of action.").  Recognizing as much, courts in this Circuit have stricken unjust enrichment class allegations.  *See Colley*, 2016 WL

---

[5] Moreover, variations in state prompt payment acts may limit how far back each putative class member may go to seek recovery of overpayments.  North Carolina, for example, typically limits recovery of overpayments to a two-year period.  *See* N.C. Gen. Stat. Ann. § 58-3-225.

5791658, at *7 ("Varying state laws preclude Plaintiffs from pursuing an unjust enrichment claim on behalf of a nationwide class."); *Cowit v. CitiMortgage, Inc.*, No. 1:12-CV-869, 2013 WL 940466, at *6 (S.D. Ohio Mar. 8, 2013) (same).

### 3. Individualized Patient-by-Patient Review is Required to Determine Whether Defendants Upcoded a Claim

Plaintiff's RICO and unjust enrichment claims are based on the same core assertion that Defendants engaged in "upcoding." To prove upcoding, Plaintiff must perform a "claim-by-claim expert analysis" that compares Defendants' selected CPT code with the medical records for the patient encounter and the professional guidelines applicable at the time of the encounter. (Doc. 1 ¶ 1 n.1). "[D]econstructing a CPT code after the fact to see if it was accurate and supported by the medical records requires special expertise and can be time-consuming." (FAC ¶ 52). Defendants submit millions of claims to payors annually. (*Id.* ¶ 62). Because the existence of a material misrepresentation and the justness of Defendants' retention of funds for each claim can only be determined by labor-intensive expert review, individualized questions will predominate over any common ones. *See Tarrify Properties*, 37 F.4th at 1107; Fed. R. Civ. P. 23, Advisory Committee Notes to 1966 Amendments, Subdivision (b)(3) ("[A] fraud case may be unsuited for treatment as a class action if there was material variation in the representations made . . . .").

Take, for example, the 435 claims Defendants submitted to Plaintiff for ED services during 2021. (*See* FAC ¶ 78 n.25). Accepting Plaintiff's allegations as true for purposes of this motion, 60% of those claims were coded at level 5. (*Id.*). But not all of these level 5 claims are products of the alleged fraud. "[M]ore likely than not, ***most*** of [those claims] were improperly upcoded to level 5 and should have been billed at a lower amount instead[.]" (Doc. 1 ¶ 94 (emphasis added)). Plaintiff estimates that the number of improperly coded level 5 claims is likely somewhere between "62% to 75%." (FAC ¶ 96).

"[C]laim-by-claim expert analysis" is the only way to identify the claims that Plaintiff contends were improperly coded. (Doc. 1 ¶ 1 n.1). Because such individualized analysis would need to be conducted for thousands of putative class members and millions of claims, individualized issues will overwhelm any common ones. *See Sandusky*, 863 F.3d at 468-69 (upholding the denial of class certification where adjudication of the controlling issues "would require manually cross-checking 450,000 potential consent forms against the 53,502 potential class members"); *Stout*, 228 F.3d at 718 (affirming the impropriety of class certification where "the factual core of the case" depended on "individualized assessment[s]").

### 4. Plaintiffs' Unjust Enrichment Theory Requires Individualized Review of the Equities of Each Transaction

Even proving that Defendants somehow upcoded a claim—an inherently individualized endeavor—is not enough for Plaintiff to prevail on its unjust enrichment theory. *See Williams v. Williams*, 323 S.E.2d 463, 465 (N.C. Ct. App. 1984) ("The mere fact that one party was enriched, even at the expense of the other, does not bring the doctrine of unjust enrichment into play."). "There must be some added ingredients to invoke the unjust enrichment doctrine." *Wright v. Wright*, 289 S.E.2d 347, 351 (N.C. 1982). The law requires evaluation of the equities surrounding the conferral of each benefit to determine if its retention would be unjust. *See JPMorgan Chase Bank, N.A. v. Browning*, 750 S.E.2d 555, 559-60 (N.C. Ct. App. 2013); *cf. Pilgrim*, 660 F.3d at 949 (emphasizing that discovery could not cure the legal impediment in plaintiffs' theory, the fact that plaintiffs' claims were "governed by different States' laws"). As liability only attaches where retention of the benefit conferred is unjust, evaluation of these circumstances is central to determination of unjust enrichment liability. *See Gerboc*, 867 F.3d at 679. Such evaluation is also an inherently individualized task. Because resolving this controlling issue is an inherently

individualized task, common questions cannot predominate. *See Sandusky*, 863 F.3d at 468-69; *Schumacher*, 2015 WL 421688, at \*4-8.

### 5. Out-of-Network Class Members Made Inherently Individualized Decisions Regarding Whether to Pay Claims and at What Rates

Individualized questions will be prevalent for the non-contracted, out-of-network payors in the class, each of whom may have had its own policies, procedures, and methodologies for reviewing claims and determining whether and how to pay. LMRMA, for example, alleged that it was out-of-network and received bills reflecting Defendants' full charges. In such situations, where a contract does not dictate the amount of payment, Defendants "leave[] it to the payor to determine how much [a] bill should be reduced." (LMRMA, Doc. 10 at ¶ 55). LMRMA made its own determinations based on application of Louisiana's unique workers' compensation rate schedule. (*Id.*). But other out-of-network payors (including those, like Plaintiff, outside Louisiana and those that provide health benefits instead of workers' compensation) will have their own payment schedules, policies, procedures, and methodologies. Individualized inquiries would be required to determine—as to each claim at issue—what claim information the payor received, whether the payor relied on that information, what audit processes the payor implemented (or chose not to implement), whether the payor reduced the billed amount, by how much, and why. *See Sandusky*, 863 F.3d at 469; *Grandalski*, 767 F.3d at 185 ("[I]ndividual inquiries would be required to determine whether an alleged overbilling constituted unjust enrichment for each class member. Such specific evidence is incompatible with representative litigation.").

Some class members may have reduced Defendants' invoices so much that there would be no unjust enrichment, or proximately-caused damages, even if Defendants had hypothetically upcoded a claim. *Cf. Grandalski*, 767 F.3d at 185 (noting the existence of "factual scenarios . . . that would lead to ostensible overbilling, but not necessarily unjust or fraudulent overbilling").

22

For example, a non-contracted class member contending that a level 5 claim should have been coded as level 4 *may have unilaterally paid* an amount commensurate with level 3. These types of individualized questions regarding the circumstances of submission, review, negotiation, and payment of each claim would overwhelm any common questions. *See Sandusky*, 863 F.3d at 469; *Nevada-Martinez v. Ahmad*, No. 5:15-CV-239-JMH, 2016 WL 7888046, at *5 (E.D. Ky. June 17, 2016) (striking class allegations where complaint established that individualized inquiries into the misrepresentations each class member received and the degree to which the class members relied on such would overwhelm common issues).

### 6. In-Network Class Members Are Subject to Hundreds, if Not Thousands, of Unique Network Participation Agreements

For in-network provider claims, the Parties and the Court would need to analyze the terms of hundreds, if not thousands, of unique network participation agreements. Many participating provider contracts contain mandatory arbitration clauses that would give rise to unique defenses for a substantial number of putative class members. *See Santangelo v. Comcast Corp.*, No. 15-cv-0293, 2017 WL 6039903, at *4 (N.D. Ill. Dec. 6, 2017) (striking class allegations because some class members' claims were subject to arbitration). Arbitration aside, the claims of in-network payors would require an individualized analysis of the relevant provisions in each contract governing payment. *See Emergency Med. Care Facilities P.C. v. BlueCross BlueShield of Tenn. Inc.*, No. W201702211COAR3CV, 2018 WL 6266529, at *7 (Tenn. Ct. App. Nov. 29, 2018) (affirming denial of class certification where the medical claims at issue were "not subject to the same contractual terms on a classwide basis").

For example, Plaintiff allegedly contracted BCBSNC to serve as the TPA for the Plan. (FAC ¶ 17). Individualized review of that contract would be required, along with each contract between BCBSNC and Defendants' affiliated medical providers. Those agreements may include

23

fee schedules that set the allowable charges for emergency medical services, including the Evaluation & Management services at issue in the FAC; audit rights; provisions requiring compliance with the contractual grievance and appeal processes related to claims payment and handling; provisions requiring compliance with BCBSNC's unique claims submission policies and reimbursement policies; and dispute resolution requirements. BCBSNC's status as TPA also raises the unique question of what steps it took to review, approve, and pay claims on Plaintiff's behalf, along with what claims information it shared with Plaintiff. *See Homeq v. Watkins*, 572 S.E.2d 731, 733-34 (N.C. Ct. App. 2002) (emphasizing that plaintiff "receiv[ed] notice" and "had the opportunity" to correct the inequity of which it complained). Similar inquiries would need to be performed for each of the potentially thousands of class members, TPAs, and other service providers involved in the process of reviewing and paying in-network medical claims. *Cf. Sandusky*, 863 F.3d at 468-69.

### 7. Class Members are Subject to Unique Geographic, Demographic, State Law, and Related Factors Impacting Their Claims

The proposed nationwide class presents intractable and individualized issues of fact. For example, Plaintiff alleges that TeamHealth physicians provided emergency medical services to Plaintiff's plan members at eight different medical centers in Western North Carolina. (FAC ¶ 70). One of these facilities—Mission Hospital in Asheville, NC (Buncombe County)—houses the only state-designated trauma center in the entire Mountain Area region. (*See* Doc. 18 at 24-26). Moreover, in 2021, Buncombe experienced "[h]igh claims per member" because of the specific "risk profile" of its insureds, including comparatively higher percentages of Moderate Risk and High Risk members. (*Id*. at 25). And, of course, the acuity levels of ED presentations during the

24

class period will be impacted by the ongoing COVID-19 pandemic.[6] (*Id.*). The manner in which these geographic, demographic, and pandemic-related factors impacted the acuity level of claims incurred by Plan members will necessarily be different than the manner in which they impacted other class members. *Cf. Tarrify Properties*, 37 F.4th at 1106-07 (holding that class certification was properly denied where "shifting facts and circumstances about the value of each property" at issue in the lawsuit would "dominate the proceedings").

For another example, Buncombe County and several other plaintiffs (including some represented by the same counsel as in this case) recently accused Mission Hospital and its owner HCA Healthcare Inc. (entities not affiliated with Defendants) of antitrust violations. Those plaintiffs claim that HCA's conduct caused emergency care patients to pay more than they should have. *See Davis et al. v. HCA Healthcare, Inc., et al.*, No. 21-cv-03276, Compl. ¶ 193 (N.C. Super. Ct. Aug. 10, 2021). These unproven allegations may be meritless. But, if true, this alleged conduct might uniquely impact proximate causation for Plaintiff's alleged injuries in ways that will not apply to other putative class members. *See Sandusky*, 863 F.3d at 468-69.

### 8. Plaintiff's Inability to Satisfy Rule 23(b)(3)'s Superiority Requirement is Likewise Evident from the Face of the FAC

"Where many individual inquiries are necessary, a class action is not a superior form of adjudication." *Young*, 693 F.3d at 545 (citation omitted). The number of individual inquiries required to resolve this case on a class-wide basis conclusively establishes that a class action is not the superior form of adjudication. *See Pipefitters Loc. 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 631 (6th Cir. 2011). As previously explained, liability for RICO and unjust

---

[6] *See, e.g.*, Jennifer Adjemian et al., *Morbidity and Mortality Weekly Report, Update: COVID-19 Pandemic–Associated Changes in Emergency Department Visits–United States, December 2020– January 2021*, Ctrs. for Disease Control & Prevention (Apr. 15, 2021), https://www.cdc.gov/mmwr/volumes/70/wr/pdfs/mm7015a3-H.pdf.

enrichment can only be determined through claim-by-claim review of thousands of medical claims for each member of Plaintiff's class. Once more, the Parties and the Court will be required to review hundreds, if not thousands, of unique network participation agreements before class-wide liability can be determined. Adjudicating this case on a class-wide basis will thus necessarily involve millions of individual inquiries.

Under binding precedent in the Sixth Circuit, the sheer volume of individual inquiries precludes Plaintiff from satisfying Rule 23(b)(3)'s superiority requirement. *See Young*, 693 F.3d at 545. In *Pipefitters*, class-wide adjudication of the dispute would have required "the district court . . . to conduct individualized inquiries into the [contract] terms and funding arrangements of each [class member]." *Id.* The Sixth Circuit emphasized that such inquiry would involve "looking at the contract terms and funding arrangements of 550 to 875 class members." *Id.* "Given the necessary number of individual inquiries," the Sixth Circuit concluded as a matter of law that "a class action cannot be a superior form of adjudication." *Id.* (citation and footnote omitted).

In this case, upwards of thousands of individual patient-by-patient inquiries will be required to adjudicate liability ***just as to Plaintiff***, let alone the thousands of other class members comprising Plaintiff's proposed class. (*See* FAC ¶¶ 78 & n.25, 80-96). When such theory of liability is extrapolated class-wide, the individual inquiries are legion. (*See id.* ¶¶ 94-95 (emphasizing that comparable plaintiffs in other litigation, presumably reflective of the class members in Plaintiff's proposed class, ***each*** reviewed "10,000" and "47,000" bills respectively)). Because the number of individual inquires in this case dwarfs the number in *Pipefitters*, Plaintiff's inability to meet Rule 23(b)(3)'s superiority requirement is clear from the face of the FAC. The class allegations should be stricken for that reason as well, as courts within this Circuit have rightly concluded. *See Nevada-Martinez*, 2016 WL 7888046, at *5 (concluding that the number of

individual inquiries evidenced "that a class action [was] not the superior method for adjudicating the putative class members' individual claims, which [would] necessarily entail extensive factual inquiries for each proposed class member."); *Schumacher*, 2015 WL 421688, at \*4-8 (holding that "inherently individualized" inquiries precluded satisfaction of Rule 23(b)'s superiority requirement).

The potential damages available to each class member individually further establishes Plaintiff's inability to satisfy Rule 23(b)(3)'s superiority requirement. With Rule 23(b)(3), "the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (citation omitted). That is not the case here: Plaintiff alleges that members of the putative class have already sued Defendants individually on the same theories Plaintiff seeks to leverage into a class action. (*See* FAC ¶ 10). One of those plaintiffs has alleged damages of over $100 million. (*See id.* ¶¶ 7 nn.4-5, 44 n.12, 79, 81, 90 & n.31, 91, 94); *Unitedhealthcare v. Team Health Holdings, Inc.,* 21CV00364DCLCJEM, 2022 WL 1481171, at \*8 (E.D. Tenn. May 10, 2022). As such, this is not a case where a class action is necessary "to overcome the problem that small recoveries" present. *Amchem*, 521 U.S. at 617 (citation omitted); *see Pipefitters*, 654 F.3d at 632 (holding that individual damages awards exceeding $280,000 did not "support a finding of superiority" under Rule 23(b)(3)).

For all of these reasons, Plaintiff's class cannot proceed under Rule 23(b)(3), and the class allegations should be stricken from the FAC. *See Pilgrim*, 660 F.3d at 945-46.

**C.    Plaintiff's Proposed Class Cannot be Certified or Maintained Under Rules 23(b)(1), 23(b)(2), or 23(c)(4)**

While the FAC primarily seeks the certification and maintenance of a money damages class under Rule 23(b)(3), the FAC also takes the kitchen sink approach of tacking on requests for

27

certification and maintenance of the class under Rules 23(b)(1), 23(b)(2), and 23(c)(4). The Court should strike these entirely conclusory allegations from the FAC. (*See* FAC ¶¶ 123-24).

### 1. Plaintiff's Conclusory Request for Mandatory Classes Under Rules 23(b)(1) and 23(b)(2) is Constitutionally Impermissible

Plaintiff's request for certification under Rules 23(b)(1) and 23(b)(2) is limited to the conclusory assertion that:

> TeamHealth has acted and failed to act on grounds generally applicable to Plaintiff and the class and that in the Court's discretion would warrant imposition of uniform relief to ensure compatible standards of conduct toward the class are met, thereby making equitable relief to the class as a whole under Rules 23(b)(1) and (b)(2) an appropriate remedy.

(*Id.* ¶ 123).

Class actions under Rules 23(b)(1) and 23(b)(2) are often described as "mandatory" classes because individual class members may not opt-out of the class action and pursue separate litigation that might prejudice other class members or the defendant. *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 447 (6th Cir. 2002). Use of mandatory classes for litigation seeking only or primarily monetary damages raises "serious constitutional concerns." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999). These concerns are two-fold. *See id.* at 845-47. First, "a mandatory settlement-only class action with legal issues and future claimants compromises their Seventh Amendment rights without their consent." *Id.* at 846. Second, "mandatory class actions aggregating damages implicate the due process 'principle . . . that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process[.]'" *Id.* (citation omitted). By infringing upon this bedrock due process principle, mandatory class actions threaten the unnamed class members' Fifth Amendment "right to a 'day in court.'" *In re Telectronics Pacing Sys., Inc.*, 221 F.3d 870, 881 (6th Cir. 2000) (citing *Ortiz*, 527 U.S. at 844-48).

28

Here, Plaintiff requests damages while simultaneously proposing class certification under Rules 23(b)(1) and (b)(2). (FAC ¶¶ 10, 113, 123, 117-18). But if the Court were to certify Plaintiff's proposed class under either provision, payors who wish to receive their day in court would have no opportunity to opt-out. *In re Telectronics*, 221 F.3d at 881. Such certification would trample these payors' Fifth and Seventh Amendment rights. *See id.* "[I]n a proper interpretation of Rule 23, principles of sound judicial management[,] constitutional considerations of due process[,] and the right to jury trial all lead to the conclusion that in an action for money damages class members are entitled to personal notice and an opportunity to opt out." *Id.* (citation omitted). Because certifying a mandatory class under Rule 23(b)(1) or 23(b)(2) would deny class members that opportunity, Plaintiff's conclusory request must be stricken from the FAC. *See Dukes*, 564 U.S. at 362.

### 2. Plaintiff Cannot Demonstrate a Risk of Inconsistent Adjudications or Rulings that Would Substantially Impair or Impede the Ability of Putative Class Members to Protect Their Interests

Plaintiff's conclusory request for certification under the two subparts of Rule 23(b)(1) is meritless for additional reasons.

First, Rule 23(b)(1)(A) is principally designed so that multiple grievances stemming from a single action by the defendant (such as a decision by a municipality or a public nuisance created by a factory) do not result in multiple courts imposing incompatible standards of conduct upon the defendant. *See Pipefitters*, 654 F.3d at 633. That is not the situation alleged here. Instead, Plaintiff asserts that Defendants have engaged in a nationwide fraud made up of millions of individual coding decisions related to thousands of individual payors. (*See* FAC ¶¶ 6, 14, 46). Even as to individual putative class members, the Parties and the Court would need to "manually go through the claims for payment and weed out the ones with overbilling." (FAC ¶ 53; *see also id.* ¶ 59).

29

But separate litigation as to the claims paid by various payors will not "impair [Defendants'] ability to pursue a uniform course of conduct." *Pipefitters*, 654 F.3d at 633. Because the coding level for any particular claim is wholly dependent upon the unique facts of that specific medical encounter, along with application of a complex set of ever-changing professional guidance and (in some instances) requirements in agreements between Defendants and in-network payors, Defendants are not at risk of being subjected to "conflicting affirmative duties." *Id.* ("Because the threshold question of BCBSM's fiduciary status depends on the ASC and funding arrangements between each class member and BCBSM, there is no prospect that individual adjudications would subject BCBSM to conflicting affirmative duties.").

Second, class actions certified under Rule 23(b)(1)(B) are designed to protect plaintiffs from one another. "The traditional and most common use of subsection (b)(1)(B) class actions is in 'limited fund' cases where claims are aggregated against a res or preexisting fund insufficient to satisfy all claims." *In re Telectronics*, 221 F.3d at 877. Plaintiff does not, and cannot, allege that such a scenario exists in this case. Plaintiff identifies no "res or preexisting fund insufficient to satisfy all [of the class members'] claims." *Id.* And Plaintiff fails to allege that Defendants possess insufficient funds "to bear the expense of litigation and pay damages if found liable." *Id.* at 878. Therefore, Plaintiff's proposed class cannot be certified under Rule 23(b)(1)(B). *See id.*

### 3. No Classwide Injunctive or Declaratory Relief is Available

Plaintiff's request for certification under Rule 23(b)(2) likewise suffers from fatal problems in addition to the Constitutional concerns set out above. "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360. "[I]t does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Id.* at 360-61; *see also Clemons v. Norton*

30

*Healthcare Inc. Ret. Plan*, 890 F.3d 254, 281 (6th Cir. 2018). Yet that is exactly what Plaintiff requests in this case: individualized monetary damages consisting of "the difference between the amount that Plaintiff and its assignors paid TeamHealth on upcoded health insurance claims and the amount that they would have paid had the underlying medical services been properly coded and billed." (FAC ¶ 161). Each class member's recovery would thus vary depending on how many claims were paid and how many claims were deemed improperly coded. *Cf. Clemons*, 890 F.3d at 281 ("And it is clear from the record that the amount of any individual class member's award may vary wildly depending on their circumstances."). This is precisely the type of individualized damages class that cannot be certified under Rule 23(b)(2). *See id.*

### 4. Certification is Not Appropriate as to any "Particular Issue" Under Rule 23(c)(4)

In entirely conclusory fashion, Plaintiff alleges that "[a]lternatively, Plaintiff is entitled under Rule 23(c)(4) to the certification of a class with respect to one or more particular issues herein." (FAC. ¶ 124). Plaintiff does not articulate any particular issue that would be appropriate for certification under Rule 23(c)(4).

Certification of an issues class is only appropriate when "[r]esolving the [certified] issues in one fell swoop would conserve the resources of both the court and the parties" and will "materially advance the litigation." *Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405, 416 (6th Cir. 2018). Rule 23(c)(4) "permits a court to split common issues off for class treatment; it does not provide an end-run around the weighty requirements of Rule 23(b)(3)." *In re Nat'l Prescription Opiate Litig.*, 976 F.3d at 675. Thus, a district court must "robust[ly] appl[y]" Rule 23(b)(3)'s requirements to the issues for which certification is sought. *Martin*, 896 F.3d at 413.

Plaintiff's tacked-on request for an alternative issues class (as to unidentified issues) fails for the same reasons as its proposed Rule 23(b)(3) damages class. Even as to separate issues within

31

Plaintiff's causes of action, no amount of discovery will reveal the existence of common questions predominating over individual ones. *See id.* at 413-14. And for that same reason, representative litigation cannot be the superior method of adjudicating any issues in Plaintiff's lawsuit. Even if common proof could be used to show some general coding practice during a particular timeframe, individual proof would still be necessary to tie that practice to each individual claim received and paid by each individual payor. *See Pipefitters*, 654 F.3d at 631. Therefore, Plaintiff cannot satisfy Rule 23(b)(3)'s requirements as to any particular issues, and Plaintiff's conclusory request for certification of an issues class under Rule 23(c)(4) should be dismissed.

## VI.    Conclusion

For all of the foregoing reasons, Plaintiff has failed to allege a class certifiable as a class action under Rule 23(a) and (b) of the Federal Rules of Civil Procedure. Defendants respectfully request that the class action allegations be stricken and that this action proceed, if at all, on behalf of the named plaintiff alone.

Respectfully submitted,

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.**

*/s/ Gary C. Shockley*
Gary C. Shockley (BPR 010104)
Caldwell G. Collins (BPR 028452)
1600 West End Avenue, Suite 2000
Nashville, Tennessee 37203
(615) 726-5704 (phone)
(615) 744-5704 (fax)
gshockley@bakerdonelson.com
cacollins@bakerdonelson.com

32

Nora A. Koffman (BPR 038025)
602 Sevier Street, Suite 300
Johnson City, TN 37604
(423) 928-0181 (phone)
(423) 928-5694 (fax)
nkoffman@bakerdonelson.com

Matthew S. Mulqueen (BPR 028418)
165 Madison Avenue, Suite 2000
Memphis, TN 38103
(901) 526-2000 (phone)
(901) 577-2303 (fax)
mmulqueen@bakerdonelson.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

      I hereby certify under Rule 5 of the Federal Rules of Civil Procedure that a true and exact copy of the foregoing Memorandum in Support of Defendants' Motion to Strike was served on the following counsel of record via operation of the Court's electronic filing system:

Mary Parker
PARKER & CROFFORD
5115 Maryland Way
Brentwood, TN 37027
mparker@parker-crofford.com

Mona L. Wallace
John S. Hughes
Olivia Smith
WALLACE & GRAHAM, P.A.
525 N. Main St.
Salisbury, NC 28144
Phone: (704) 633-5244
mwallace@wallacegraham.com
jhughes@wallacegraham.com
osmith@wallacegraham.com

Janet Varnell
VARNELL AND WARWICK, PA
1101 E. Cumberland Avenue
Suite 201H, #105
Tampa, FL 33602
jvarnell@vandwlaw.com

33

Robert N. Hunter, Jr.
HIGGINS BENJAMIN, PLLC
301 N Elm St Suite 800
Greensboro, NC 27401
Phone: (336) 275-7577
rnhunterjr@greensborolaw.com

Dated March 24, 2023.

_/s/ Gary C. Shockley_
Attorney