**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **BUNCOMBE COUNTY, NORTH CAROLINA, individually and on behalf of all those similarly situated,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) ) | **Case No. 3:22-cv-00420-DCLC-DCP** |
| **TEAM HEALTH HOLDINGS, INC., AMERITEAM SERVICES, LLC, and HCFS HEALTH CARE FINANCIAL SERVICES, LLC,** | ) ) ) ) ) | |
| **Defendants.** | ) ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO STRIKE**

Plaintiff, Buncombe County, North Carolina (the "County"), on behalf of itself and a class of those similarly situated, pursuant to LR 7.1 respectfully responds to the motion to strike (Doc. 37) filed by the Defendants, Team Health Holdings, Inc. ("Team Health Holdings"), Ameriteam Services, LLC ("Ameriteam") and HCFS Health Care Financial Services ("HCFS").

**I.**      **Nature of the case.**

Preceding this action, TeamHealth has been accused of scheming to systematically turn emergency rooms into corporate profit centers through fraudulent upcoding by the United States Government[1], United HealthCare[2] who is the nation's largest insurer, and Celtic Insurance Company[3].

---

[1] *See United States ex rel. Hernandez v. Team Fin., L.L.C.*, No. 2:16-CV-00432-JRG, 2020 U.S. Dist. LEXIS 26608, 2020 WL 731446 (E.D. Tex. Feb. 13, 2020).
[2] *UnitedHealthCare Servs., Inc. v. Team Health Holdings, Inc.*, No. 21-CV-364 (E.D. Tenn.).
[3] *Celtic Ins. Co. v. TeamHealth Holdings, Inc.*, No. 3:2020cv00523 (E.D. Tenn.).

1

Upcoding means the practice by which coders, who must review medical records and assign certain billing codes, assign a higher-level code than what would be appropriate.[4] In United HealthCare's complaint, it identified numerous specific examples of what it alleged was massive upcoding of insurance claims sent to it by the TeamHealth organization between 2016 and 2021.[5]

Each of these lawsuits, including the case at bar, alleges that TeamHealth's coding and billing apparatus known as HCFS was using a uniform staff of coding and billing personnel working under uniform top-down rules, protocols, policies and procedures, to send millions of upcoded bills to health plans throughout the United States. HCFS was doing precisely the same thing in its millions of similar bills that were sent out to other health plans – like the Buncombe County medical plan at issue herein operated by the County. As these allegations and settlements have become available to the public, the County performed its own investigation, locating specific examples of the billing fraud which it has specifically pled in detail in the First Amended Complaint ("FAC").[6] These specific examples are materially indistinguishable in kind from those that were alleged both in the *United HealthCare* complaint and in the *Celtic Ins.* complaint.

Defendants' Motion to Strike asks this Court to ignore the allegations that HCFS upcoded millions of claims sent to the government, United HealthCare, Celtic, Buncombe County, as well as the Louisiana Municipal Risk Management Agency ("LMRMA").[7] It defies logic to suggest

---

[4] *Id*., complaint ¶ 1 (defining upcoding); FAC ¶ 12 ("Following uniform rules, policies, practices, and procedures, HCFS overbills by using improper CPT codes to inflate health insurance claims.").
[5] *See United HealthCare* complaint ¶ 1 (dating scheme at least back to 2016). As an example, *see id*. at ¶ 9 "As just one example, in January of 2021, a 23-year-old man suffering from indigestion after eating a chili dog sought treatment at an emergency room staffed by TeamHealth. The doctor gave him Maalox and sent him home. TeamHealth submitted a claim to the United Plaintiffs indicating that it had provided that member with emergency medical care of particularly high complexity under exigent circumstances, and charging $1,712.00."
[6] FAC ¶ 107.
[7] *See Louisiana Municipal Risk Mgmt. Agency v. Team Health Holdings, Inc*., No. 3:22-CV-00104-DCLC-JEM, 2022 U.S. Dist. LEXIS 209567, 2022 WL 17086389 (E.D. Tenn. Nov. 18, 2022).

2

that HCFS was using a different coding practice for the claims for payment that it sent to other healthcare plans across the nation. Absent a class remedy, no remedy is practical. Numerous courts have denied motions to strike class allegations in RICO cases as well as other analogous varieties of class actions, all as is further discussed below. This Court should hold the same.

## II.    Issues Presented.

1.    Whether Defendants' motion to strike is premature because it is simply a recitation of their anticipated brief in opposition to Plaintiff's not-yet-filed, not-yet-due motion for class certification?

2.    Whether Defendants' motion is also premature where in the *United HealthCare* case, the plaintiff there alleged an identical upcoding scheme affecting not one, but numerous medical plans, encompassing thousands bills, and this Court denied a Rule 12(b)(6) motion to dismiss the RICO claim on the merits in that case?

3.    Whether Plaintiff can satisfy Rule 23(a) and (b)(3)'s requirements for purposes of their RICO claim when they plead a common enterprise and pattern of upcoding and resultant overbilling, other courts have certified RICO classes under analogous circumstances, and numerous putative class members absent class certification would lack a remedy?

4.    Whether Plaintiff can satisfy Rule 23(a) and (b)(3)'s requirements for purposes of their unjust enrichment claim when the claim is properly pled and where other courts have certified unjust enrichment classes?

5.    Whether a class can be certified under Rules 23(b)(1), (b)(2), or (c)(4) for injunctive or declaratory relief, or on "issue class" grounds, where other courts have denied motions to strike class allegations in analogous cases and where such claims are not *per se* barred.

## III.    Facts.

### A.    Parties and allegations.

The Court is highly familiar with the basic factual allegations against the TeamHealth enterprise as to upcoding and overbilling medical services by its providers from approximately 2016-17 to present, as alleged in prior litigation. *See UnitedHealthCare Servs., Inc. v. Team Health Holdings, Inc.,* No. 21-CV-364, 2022 U.S. Dist. LEXIS 84264, *4-12, 2022 WL 1481171 (E.D. Tenn. May 10, 2022) (summarizing the factual allegations in the *United HealthCare* complaint); *Louisiana Municipal Risk Mgmt. Agency v. Team Health Holdings, Inc.,* No. 3:22-

3

CV-00104-DCLC-JEM, 2022 U.S. Dist. LEXIS 209567, *1-8, 2022 WL 17086389 (E.D. Tenn. Nov. 18, 2022) (same, allegations from LMRMA complaint).

Additional facts are highlighted in Plaintiff's contemporaneously filed response to Defendants' motion to dismiss, and Plaintiffs note:

- Plaintiff has alleged two specific examples of what on information and belief are accurate texts of summaries by two former HCFS coders of their work experience in the TeamHealth organization.[8] They both specifically mentioned the prevalence of upcoding. They both mentioned it defensively, as something they were basically forced to do by the TeamHealth system. From what can be derived, that system involves overworking live and remote coding staff – typically underpaid females – under onerous efficiency requirements, and a pay, promotion and favoritism culture that encourages upcoding.

- If these facts are true for Plaintiff, they are likely to be true for all bill recipients. The Plaintiff alleges a uniform fraudulent scheme. Under this business model, overworked and underpaid coders in a corporate culture that knew of the practice, were (and maybe still are)[9] routinely upcoding. All of these coding personnel worked for HCFS, which acted as a bottleneck[10] in the overall enterprise – the single place where incoming medical records electronically sent from hundreds of local medical practices all over the country were sent for coding and billing. Plaintiff alleges that Defendants engaged in the same routine upcoding and overbilling in bills that were sent to the County with regard to care provided to

---

[8] FAC ¶¶ 97-98.

[9] It seems incomprehensible that Team Health would continue to allow the upcoding to occur even after being sued over it, but the timeline of cases reflects that even after being sued over upcoding years ago, the company continued to allow it to occur. *See United States ex rel. Hernandez v. Team Fin., L.L.C.*, No. 2:16-CV-00432-JRG, 2020 U.S. Dist. LEXIS 26608, *31, 2020 WL 731446 (E.D. Tex. Feb. 13, 2020) (denying motion to dismiss relator's complaint filed under the False Claims Act, 31 U.S.C. § 3729 *et seq.* alleging upcoding against Team Health-acquired entity); *Celtic Ins. Co.*, No. 3:20-cv-00523-DCLC-HBG, Doc. 1, complaint filed Dec. 10, 2020 ¶¶ 8-17 alleging *inter alia* upcoding/overbilling); *Emergency Care Servs. of Pennsylvania v. UnitedHealth Group*, No. 5:20-cv-5094 (E.D. Pa.), *see* ECF No. 37 (counterclaim alleging that TeamHealth-related entity engaged in upcoding); *United HealthCare Servs., Inc. v. Team Health Holdings, Inc.*, No. 3:21-cv-00364 (E.D. Tenn.) (same, primary claim); *United States ex rel. Oughatiyan v. IPC the Hospitalist Co., Inc.*, No. 09-C-5418, 2015 U.S. Dist. LEXIS 19066, 2015 WL 718345 (N.D. Ill. Feb. 17, 2015) (denying in part motion to dismiss FCA claim of Team Health hospitalist overbilling); *U.S. ex rel. Mamalakis vs. Anesthetix Management LLC*, No. 19-3117, 2021 U.S. App. LEXIS 36193, 2021 WL 5818476 (Dec. 8, 2021) (alleging Team Health anesthesiologist overbilling).

[10] FAC ¶ 8.

participants in its plan, just like in bills they sent to United HealthCare and Celtic, and others, over the same time period.

- Defendants' arguments assume that discovery into their business practices will at best only reveal scattered innocuous mistakes. And yet Defendants deploy this argument before any discovery is to be had. The motion is grossly premature as the FAC alleges numerous facts which, if taken as true (and which Plaintiff expects to prove in discovery) allow an inference and conclusion of both a RICO and unjust enrichment violation, and furthermore, a systemic one which after appropriate discovery has been conducted is susceptible to class treatment.

- Plaintiff has alleged factual statistical evidence.[11] This evidence shows that TeamHealth bills at higher CPT codes on average as compared to other providers.

## B. <u>Prior litigation</u>.

Defendants harp on the fact that other plaintiffs, who were represented by one of more of the same counsel, have sued Defendants.[12] This is irrelevant to the claims brought by a different Plaintiff, the County. The Federal Rules of Civil Procedure allow complaints to be filed. The Rules also allow amendments to be made. Significantly, no court to date has ruled adversely to the plaintiffs on the merits of the overbilling claim. To the contrary, this Court denied a motion to dismiss a RICO claim in the *United HealthCare* case, and the Court only dismissed the *LMRMA* case on the narrow grounds of standing.[13]

The bottom line is that as an independent litigant, the County is entitled to have its case heard on its own merits.

---

[11] FAC ¶¶ 77-100.
[12] Def. Br. 5-6.
[13] *See UnitedHealthCare Servs., Inc.*, 2022 U.S. Dist. LEXIS 84264, *35-39, (*inter alia* denying Rule 12 motion to dismiss RICO claim founded upon allegations of upcoding and overbilling); *Louisiana Municipal Risk Mgmt. Agency*, 2022 U.S. Dist. LEXIS 209567, *16 (granting motion to dismiss on narrow grounds of lack of standing).

IV.     **Legal Standard.**

This Court recited the legal standard in *Moore v. Westgate Resorts Ltd.*, 3:18-cv-00410-DCLC-JEM, 2020 U.S. Dist. LEXIS 216516, *74-75, 2020 WL 6814666 (E.D. Tenn. Nov. 18, 2020):

> Defendants have moved to strike Plaintiffs' class allegations and jury demand pursuant to Federal Rule of Civil Procedure 12(f) [Doc. 102, pgs. 19-25]. Rule 12(f) allows the Court to "strike from a pleading ... any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). **"Motions to strike are viewed with disfavor and are not frequently granted."** *Operating Engineers Local 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (citing *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)). Such motions should be granted only if "it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense and are inferable from the pleadings." *Id.* (citing *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991)).

(Emphasis added). Federal courts routinely deny motions to strike class allegations and defer such decisions until the record in a case is more fully developed and the plaintiff brings a class certification motion. *See Bright v. Brookdale Senior Living,* No. 3:19-cv-00374, U.S. Dist. LEXIS 250711, *33, 2021 WL 6496799 (M.D. Tenn. March 12, 2021):

> Motions to strike are governed by Federal Rule of Civil Procedure 12, which allows the Court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Although the "rigorous analysis" required of class certification is typically conducted at a later stage, the Sixth Circuit has stated that a district court may strike class allegations "where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011). **However, if the existing record is inadequate for resolving the relevant issues," the Court should defer a decision on class certification.** *In re Am. Med. Sys.*, 74 F.3d 1069, 1086 (6th Cir. 1996).

(Emphasis added).

Motions to strike class allegations prior to discovery have been routinely denied by courts except in the clearest of cases. *See, e.g., Nixon v. Anthem, Inc.*, No. 3:19-cv-00076-GFVT, 2021

U.S. Dist. LEXIS 168382, *3, 2021 WL 4037824 (E.D. Ky. Sept. 1, 2021).[14] That court gave a summary of the law as follows:

> In general, "[m]otions to strike are viewed with disfavor and are not frequently granted." *Operating Eng'rs Local 324 Heath Care Plan v. G&W Constr. Co.,* 783 F.3d 1045, 1050 (6th Cir. 2015). Furthermore, though procedurally permissible, striking a plaintiff's class allegations prior to discovery and a motion for class certification is a rare remedy. *See Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974); *see also Blue Springs Dental Care, LLC v. Owners Ins. Co.*, 488 F. Supp. 3d 867, 880 (W.D. Mo. 2020) (finding that striking a party's pleading **"is an extreme and disfavored measure," especially, in the class action context, "because it is seldom, if ever, possible to resolve class representation question from the pleadings alone"**); *Chen-Oster v. Goldman, Sachs & Co*., 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) ("Generally speaking ... motions of this kind are deemed procedurally premature."); *Chenensky v. New York Life Ins. Co*., 2011 U.S. Dist. LEXIS 48199, 2011 WL 1795305, at *1 (S.D.N.Y. Apr. 27, 2011) (citations omitted) ("A motion to strike class allegations ... is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of ... litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification.").
>
> Generally, "a district court should defer decision on class certification issues and allow discovery 'if the existing record is inadequate for resolving the relevant issues.'" *Bearden v. Honeywell Int'l, Inc.,* 720 F. Supp. 2d 932, 942 (M.D. Tenn. 2010) (citing *In re Am. Med. Sys.,* 75 F.3d at 1086); *see also Geary v. Green Tree*

---

[14] *See also In re Papa John's Emple. & Franchisee Emple. Antitrust Litig.,* No. 3:18-CV-00825-JHM, 2019 U.S. Dist. LEXIS 181298, *38, 2019 WL 5386484 (W.D. Ky. Oct. 21, 2019) (denying motion to strike class allegations); *Modern Holdings, LLC v. Corning Inc.,* No. 13-405, 2015 U.S. Dist. LEXIS 41138, 2015 WL 1481459, at *7 (E.D. Ky. Mar. 31, 2015) (same); *In re Allstate Ins. Co. Underwriting & Rating Practices Litig*., 917 F. Supp. 2d 740, 751 (M.D. Tenn. 2008) (noting that, where there has not been class discovery, it is appropriate to defer decision on contested class issues); *Bearden v. Honeywell Int'l, Inc.,* 720 F. Supp. 2d 932, 942 (M.D. Tenn. 2010) (accord); *Allen v. Andersen Windows, Inc.,* 913 F. Supp. 2d 490, 516 (S.D. Ohio 2012) (declining to strike class allegations at the pleading stage, deeming it prudent to evaluate after class certification briefing); *Eliason v. Gentek Building Prods., Inc*., No. 1:10-cv-2093, 2011 WL 3704823, 2011 U.S. Dist. LEXIS 94032, *7-8 (N.D. Ohio Aug. 23, 2011) (noting that a motion to strike class allegations is not a substitute for class determination); *Faktor v. Lifestyle Lift*, No. 1:09-CV-511, 2009 U.S. Dist. LEXIS 47978, 2009 WL 1565954, *2 (N.D. Ohio June 3, 2009) (finding that defendant's arguments about class certification premature where they were made prior to the parties' first case management conference); *Geary v. Green Tree Servicing, LLC*, No. 2:14-CV-00522, 2015 U.S. Dist. LEXIS 35059, 2015 WL 1286347, *16 (S.D. Ohio Mar. 20, 2015) (accord); *Amerine v. Ocwen Loan Servicing LLC*, No. 2:14-CV-15, 2015 U.S. Dist. LEXIS 178248, 2015 WL 10906068, at *1 (S.D. Ohio Mar. 31, 2015) (accord).

7

*Servicing, LLC*, 2015 U.S. Dist. LEXIS 35059, 2015 WL 1286347, at *17 (S.D. Ohio Mar. 20, 2015) ("Without further insight into the facts, the Court lacks the foundation to conduct the 'rigorous analysis' required by Rule 23 and determine the appropriateness of class certification."); *In re Allstate Ins. Co. Underwriting & Rating Practices Litig.,* 917 F. Supp. 2d 740, 751 (M.D. Tenn. 2008) (noting that, where "there has not been class discovery ... nor extensive briefing on class issues," it is appropriate to defer decision on contested class issues); *Rios v. State Farm Fire & Cas. Co.,* 469 F. Supp. 2d 727, 740 (S.D. Iowa 2007) (agreeing with Plaintiffs that a motion to strike allegations is premature because "class discovery has not yet been completed").

> **At this stage, because the parties have not yet commenced discovery, "[t]he moving party has the burden of demonstrating from the face of the plaintiffs' complaint that it will be impossible to certify the class as alleged, regardless of the facts plaintiffs may be able to prove [through discovery]."** *Schilling v. Kenton Cnty.*, 2011 U.S. Dist. LEXIS 8050, 2011 WL 293759, at *4 (E.D. Ky. Jan. 27, 2011) (citations omitted); *see also Bearden*, 720 F. Supp. 2d at 942 (providing that class allegations should be stricken prior to discovery only if "it is clear from the face of the complaint that a proposed class cannot satisfy the requirements of Rule 23"). "Before a motion to strike [class allegations] is granted, the court must be convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim[s] ... succeed [in class action form]." *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) (citations omitted).

2021 U.S. Dist. LEXIS 168382, *5-7 (emphases added).

### V.   <u>Argument.</u>

#### A.   <u>Plaintiff at this stage should not have to establish commonality, typicality or any of the other Rule 23 requirements; there has been no discovery and Plaintiff has not yet moved for class certification.</u>

Courts strongly disfavor motions to strike when there has been no discovery. There is no reason to deviate from that general rule here.  The motion may be denied for this reason alone. There has been no scheduling order entered.  Typically, in a class action, a scheduling order provides for discovery and then, the plaintiff has a due date to file their motion for class certification under Rule 23.  That should be the process here.

Defendants' motion seeks to put the cart before the horse. Defendants argue that Plaintiff cannot establish commonality and typicality at pages 7 to 11 of their brief.  Yet none of the cases

8

Defendants cite for this argument related to motions to strike before discovery. Rather, the cases all involved contested motions for class certification filed after discovery. None of the cited cases apply here.[15]

## B. Defendants' argument that "Plaintiff Fails to Allege Common Emergency Medical Encounters or Common Applications of CPT Coding Guidelines" is a red herring.

Defendants try to re-frame the issue regarding the CPT upcoding fraud in order to make it seem as though there are a myriad of individualized factual issues. Def. Br. 10 (characterizing coding standards as "complex and subjective"). In fact, coding is governed by accepted uniform standards. And upcoding is not a practice insulated from liability by subjectivity, but rather, recognized as a common form of fraud, provable, and subject to legal action. "'Upcoding,' a common form of Medicare fraud, is the practice of billing Medicare for medical services or equipment designated under a code that is more expensive than what a patient actually needed or was provided." *United States ex rel. Bledsoe v. Cmty. Health Sys*., 342 F.3d 634, 637 n.3 (6th Cir. 2003), citing *Bonnie Schreiber et al., Health Care Fraud*, 39 Am. Crim. L. Rev. 707, 750 n.331 (2002). The coder is to review the medical chart from the provider, and applying the accepted standards, assign the proper code. Because there are accepted standards, it is possible to audit coding. *United States v. Lakeshore Med. Clinic, Ltd*., No. 11-CV-892, 2013 U.S. Dist. LEXIS

---

[15] *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542 (6th Cir. 2012) (affirming district court order granting Rule 23 motion for class certification); *In re Nat'l Prescription Opiate Litig*., 976 F.3d 664, 674 (6th Cir. 2020) (reversing district court order granting Rule 23 motion to certify class); *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015) (affirming district court order granting class certification); *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 459 (6th Cir. 2020) (same); *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006) (same); *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (same); *Sprague v. Gen. Motors Corp*., 133 F.3d 388, 397-98 (6th Cir. 1998) (reversing in part district court's order granting class certification); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) (reversing district court's order granting class certification).

44640, *9, 2013 WL 1307013 (E.D. Wisc. Mar. 28, 2013). Rejecting Defendants' "coding is subjective" contention there, that court found:

> Relator's allegations are sufficiently detailed to survive defendant's Rule 12(b)(6) and 9(b) motions. Although she does not allege that defendant knew that specific requests for reimbursement for E/M services were false, she claims that defendant ignored audits disclosing a high rate of upcoding and ultimately eliminated audits altogether. These allegations plausibly suggests that defendant acted with reckless disregard for the truth and submitted some false claims. Defendant responds that coding decisions are subjective and that most of the errors alleged involve only one-level coding differences. While a one-level coding difference might reflect a legitimate difference of opinion as to the value of the services provided, it could also result from wrongful upcoding and from defendant's failure to review bills that it had reason to believe contained errors.

*Id.*

In short, coding is intentionally governed by replicable, agreed-upon criteria. It is not an ungovernable discretionary subjective decision by a coder that cannot be reviewed or help up against accepted standards to determine whether there is upcoding.

Defendants also argue that because the medical bills were for different patients with different conditions who received different care, there can be no commonality among the claims or the class members. But this is a red herring since, of course, the focus is not on whether a given patient was treated for a cold or a fall – rather, the focus is on whether then the claim was unlawfully upcoded as a CPT Code Level 5 when it should have been a lower level. This involves the application of one set of uniform standards – the coding standards – to myriad patient charts. But that does not make the standards any less uniform or the coder's work any less auditable.

Thus, where Defendants argue that "Plaintiff's own representative examples include one patient with intermittent palpitations; one with shortness of breath and asthma; one with abdominal pain, urinary frequency, and white blood cells in her urine; one with thrombocytopenia (low platelet count); and one with chest pain," Def. Br. 9, these are distinctions without a difference.

Likewise, the specific examples provided in the *United HealthCare* complaint involved all manner[16] of emergency room patients and presenting complaints, but one overriding common element:  the unlawful upcoding.  The overriding common element of unlawful upcoding is the same exact common issue presented in the County's Complaint.

### C.   Other RICO class actions have been certified regardless of defense arguments about proximate causation and reliance.

Defendants seek to argue the specter of individual causation and reliance issues as something that will derail class certification.  Of course, it is grossly premature without discovery to even reach the issue.  However, courts have routinely granted class certification in RICO actions over such objections.  As the court observed in *Robinson v. Fountainhead Title Group Corp.*, 257 F.R.D. 92, 94 (D. Md. 2009), "[m]any courts … faced with similar reliance arguments have certified RICO claims for class action treatment, finding that common issues predominate over individualized ones."  *See also Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 663-64 (7th Cir. 2004) (class of consumers under RICO); *Chisolm v. TranSouth Financial Corp.,* 184 F.R.D. 556, 562-63 (E.D. Va. 1999) (certifying class action alleging violations of RICO), *certification upheld*, 194 F.R.D. 538 (E.D. Va. 2000). *Accord Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277 (11th Cir. 2006) (recognizing that RICO claims "are often susceptible to common proof"); *Belin v. Health Ins. Innovations, Inc.*, 337 F.R.D. 544, 557 (S.D. Fl. 2021) ("In addition to raising common questions that focus on a scheme, RICO claims likewise raise questions of a standardized course of conduct.").

The courts have found that "while each plaintiff must prove reliance, he or she may do so through common evidence (that is, through legitimate inferences based on the nature of the alleged

---

[16] *United HealthCare* complaint ¶¶ 73-87 (alleging 13 specific examples ranging from a patient with fever and headache to a patient who reported abdominal pain).

11

misrepresentations at issue)." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1259 (11th Cir. 2004). In *Klay*, the Eleventh Circuit affirmed the certification of a RICO class action where the plaintiffs alleged that a number of health maintenance organizations had conspired in a scheme to cheat doctors by underpaying billed reimbursements. *Id.* Likewise here, Defendants conspired in a scheme to cheat plans and payors by upcoding billing claims. There is no reason why the one fact pattern may be potentially certified but not the other. *See also Brenner v. Future Graphics, LLC*, 258 F.R.D. 561, 569 (N.D. Ga. 2007) (noting that "there are a multitude of common legal and factual issues that must be resolved in litigating the plaintiffs' RICO claims against the defendants"); *Compound Prop. Mgmt. LLC v. Build Realty, Inc.*, No. 1:19-cv-133, 2023 U.S. Dist. LEXIS 28957, *24, 2023 WL 2140981 (S.D. Ohio Feb. 21, 2023) (holding in part that "[t]he Court … determines it should certify the class for Plaintiffs' civil RICO and breach of fiduciary duties claims" as "[b]oth claims satisfy each of the Rule 23(a) requirements, and each also falls within the scope of Rule 23(b)(3)").

A detailed analysis of the reliance issue was provided by a court in the recent case of *Compound Prop. Mgmt. LLC v. Build Realty, Inc.*, No. 1:19-cv-133, 2023 U.S. Dist. LEXIS 28957, 2023 WL 2140981 (S.D. Ohio Feb. 21, 2023). Note that this discussion occurred in the context of analyzing plaintiff's motion to certify a class after discovery had been undertaken – whereas in the present case, Defendants are trying to strike class allegations and block discovery before it has even started. Regardless, in *Compound Prop. Mgmt. LLC* the court granted the motion to certify and discussed:

> In terms of the required predicate acts, Plaintiffs focus this Motion for Certification on the crime of mail fraud. (Doc. 191, #9279-80). As a crime, mail fraud contains three elements: "(1) a scheme or artifice to defraud; (2) use of interstate [mail or] wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property." *United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003) (quoting *United States v. Prince*, 214 F.3d 740, 747-48 (6th Cir. 2000)); 18 U.S.C. § 1343. "A scheme to defraud is 'any plan or course of action by which someone intends to deprive another of money or property by means of false or

12

fraudulent pretenses, representations, or promises.'" *In re ClassicStar Mare Lease Litig.,* 727 F.3d 473, 484 (6th Cir. 2013) (quoting United States v. Faulkenberry, 614 F.3d 573, 581 (6th Cir. 2010)). Any mailing sent "incident to an essential part of the scheme satisfies the mailing element even if the mailing itself contains no false information." *Bridge v. Phoenix Bond & Indem. Co*., 553 U.S. 639, 648, 128 S. Ct. 2131, 170 L. Ed. 2d 1012 (2008) (citation and internal quotes omitted).

Plaintiffs need not prove reliance. To be sure, courts once held that mail fraud as a predicate for civil RICO included an additional element of reliance, mirroring common law fraud. *See Chaz*, 2006 U.S. Dist. LEXIS 60013, 2006 WL 2453302, at *2. But in 2008 the Supreme Court clarified that mail fraud as a predicate for civil RICO does not include the element of a plaintiff's first-person reliance on any one misrepresentation. *Bridge*, 553 U.S. at 649. "Because an individual can commit an indictable act of mail or wire fraud even if no one relies on his fraud, he can engage in a pattern of racketeering activity, in violation of § 1962, without proof of reliance." *Id*. (quoting *Anza v. Ideal Steel Supply Corp*., 547 U.S. 451, 476, 126 S. Ct. 1991, 164 L. Ed. 2d 720 (2006) (Thomas, J., concurring)). That said, some reliance by somebody may be needed to satisfy RICO's causation element. *Id.* at 478; *see Anza*, 547 U.S. at 478 ("Reliance is doubtless the most obvious way in which fraud can cause harm, but it is not the only way.") (quoting *Sys. Mgmt., Inc. v. Loiselle,* 303 F.3d 100, 105 (1st Cir. 2002)). In other words, causation, not reliance, is an element of civil RICO predicated on mail fraud, but reliance offers a way to establish causation.

The upshot is that Plaintiffs, alone or as a class, must prove ten elements to prevail in their civil RICO claim against Defendants. In particular, they must show that Defendants engaged in (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering, through (5) at least two acts of mail fraud, in which Defendants created (6) a scheme or artifice to defraud, (7) that used interstate mail or wire communications in furtherance of the scheme, and (8) that intended to deprive a victim of money or property, ultimately (9) causing Plaintiffs an (10) injury to their commercial interests. As claims go, it's no walk in the park.

While complex, **the Court agrees that common questions predominate over this analysis. Of the above elements, the majority can be proven or disproven on a uniform class wide basis because they revolve around the operations of Build Realty and its affiliates, under their common business plan.** As Plaintiffs contend, and the Court agrees, the core inquiry is the legality of Build Realty's business practices and the legal meanings of certain agreements. These central questions are subject to class wide resolution with one opinion by this Court or one verdict by a jury. Indeed, only two of the ten elements must be proven by an individualized showing of the class membership: causation and injury (as well as damages). For these reasons, common questions predominate over individual questions as to Plaintiffs' civil RICO claim.

*Compound Prop. Mgmt. LLC*, 2023 U.S. Dist. LEXIS 28957, *57-60 (emphasis added). Here, a similar analysis should apply – once the parties and the Court reach the class certification stage. However, at this juncture, the motion to strike is vastly premature.

Defendants argue that "[w]hile class-wide litigation is possible in cases where all class members received the same alleged misrepresentation, it is unthinkable in cases where each class member's claims for RICO violations and unjust enrichment involve different alleged misrepresentations." Def. Br. 11. Yet, this is not a case of varying fraudulent oral misrepresentations. Rather, it involves coding by one team of personnel working in one component of Team Health (namely, HCFS), under one set of applicable CPT coding standards, using the same upcoding practices in bill after bill.

In this regard, Defendants cite *Grainger v. State Sec. Life Ins. Co*., 547 F.2d 303, 307 (5th Cir. 1977). Def. Br. 11. It does not apply; it involved oral misrepresentations regarding insurance policies. Likewise, Defendants cite *Moore v. PaineWebber, Inc*., 306 F.3d 1247, 1253 (2d Cir. 2002); it also involved salesmen making oral misrepresentations to sell policies. *Loreto v. Proctor & Gamble Co.,* No. 1:09-cv-815, 2013 U.S. Dist. LEXIS 162752, 2013 WL 6055401 (S.D. Ohio Nov. 15, 2013) involved a false advertising claim. *See also Lichoff v. CSX Transp., Inc*., 218 F.R.D. 564, 571 (N.D. Ohio 2003) (involving oral misrepresentations) (cited at Def. Br. 12). The cases do not apply here where there are no allegations as to oral misrepresentations made by Defendants.

### D. <u>Courts have certified unjust enrichment claims</u>.

Plaintiff's claim for unjust enrichment is an alternative theory in the event that they are unable to obtain recovery under RICO and is based upon a theory that Plaintiff conferred a monetary benefit on Defendants as a result of Team Health's fraudulent upcoding and billing

14

practices. Many courts in the Sixth Circuit have either certified class claims or denied motions to strike class allegations for unjust enrichment claims where a Defendant's pattern and practice is a common issue that predominates across the class. See *Ham v. Swift Transp. Co.*, 275 F.R.D. 475, 487 (W.D. Tenn. 2011) (Defendants pattern and practice of conducting flawed testing justified returning any money had a received for this purpose was a common issue supporting class certification of unjust enrichment theory); *Thompson v. City of Oakwood, Ohio*, 307 F. Supp. 3d 761, 785 (S.D. Ohio 2018), *modified,* No. 3:16-CV-169, 2018 WL 9944970 (S.D. Ohio Apr. 4, 2018) (granting class certification of a Rule 23(b)(2) unjust enrichment multistate class by property owners); *Kirkbride v. Kroger Co.*, No. 2:21-CV-0022, 2022 WL 2703960, at *13 (S.D. Ohio July 12, 2022) (denying motion to strike class allegations for unjust enrichment claim until discovery would permit Plaintiff to refine class definition); *McKenzie Law Firm, P.A. v. Ruby Receptionists, Inc.*, No. 3:18-cv-1921-SI, 2020 U.S. Dist. LEXIS 72904, *12-13, 2020 WL 1970812 (D. Or. April 24, 2020) ("The alleged harm shared by the putative class members is that Ruby breached the standard form contracts it had with them by miscalculating the duration of their calls, resulting in overbilling…. Plaintiffs list several common significant questions of law or fact, including … whether Ruby's conduct can support claims of unjust enrichment….").

Defendants argue that "[a]s to unjust enrichment, each class member would need to separately establish that it has standing to assert claims on behalf of any plan members, that it has exhausted administrative remedies, that payment exceeded the reasonable value of the attendant services, that unjust enrichment liability is not precluded by the presence of express contracts, and that it would be unjust for Defendants to retain the benefit." Def. Br. 13. However, a plaintiff must establish standing in any case – this is not limited to unjust enrichment claims. By Defendants' logic, then, no case can ever be certified on any claim, since after all, standing is a

necessary element of any claim. Defendants are confusing prevailing on the merits with standing. Here, where class members paid money that was unjustly retained, they have standing. Exhaustion of administrative remedies is, arguably, a condition precedent. However, this is why we have discovery to assist the parties and the Court with determining how the class should be refined to promote efficiency in litigation.

The calculation of payment over reasonable value should be calculable given its connection to the set of five CPT codes alleged in the FAC. *See* FAC ¶ 107 (alleging how higher levels of CPT codes are assigned to sequentially higher payments). This is the overriding common issue for the proposed class. If the presence of express contracts limits recovery for unjust enrichment as to certain class members, then discovery is the only reasonable way to inform that question. Yet Defendants seek to have the Court make assumptions out of thin air that there are many express contracts and that the class cannot be defined to exclude those situations.

**E.** **Purported differences in state unjust enrichment law will not necessarily predominate nor is the issue ripe for decision.**

Defendants argue that the unjust enrichment claim cannot be certified because the law is different in each state. First, this is not an issue that should be reached at this time; it is vastly premature. Second, even if Defendants were right, a class could still be certified for the State of North Carolina where the Plaintiff County is located. Third, Defendants' argument assumes that for purposes of this claim, there is a real conflict of law as between the various states that may be ultimately encompassed by a class definition.

As for unjust enrichment claims of the proposed national class, several courts have recognized that "a universal thread throughout all common law causes of action for unjust enrichment" is "a focus on the gains of the defendants." *Keilholtz v. Lennox Hearth Prods. Inc.*, 268 F.R.D. 330, 341 (N.D. Cal. 2010). "Laws concerning unjust enrichment do vary from state to

state. But differences in state laws do not always outweigh the similarities, especially in cases concerning unjust enrichment claims." *Id. See also Schumacher v. Tyson Fresh Meats, Inc*., 221 F.R.D. 605, 612 (D.S.D. 2004) ("The spectre of having to apply different substantive laws does not warrant refusing to certify a class on the common-law claims."); *United Wis. Servs. v. Abbott Labs. (In re Terazosin Hydrochloride Antitrust Litig.)*, 220 F.R.D. 672, 697 n.40 (S.D. Fla. 2004) ("The standards for evaluating each of the various states classes' unjust enrichment claims are virtually identical."); *Westways World Travel, Inc. v. AMR Corp*., 218 F.R.D. 223, 240 (C.D. Cal. 2003) (certifying nationwide class of unjust enrichment claimants).

F.     **Defendants' argument regarding "Prior Putative Class Representatives in Related Failed Cases" should be rejected.**

Defendant argues that the Plaintiff should be at best limited to representing "similarly situated plan sponsors, administrators, and funders of self-funded municipal plans." Def. Br. 14. Defendants contend that Plaintiff's putative class definition is overbroad because it is generally inclusive of "payors" and it goes beyond emergency services. However, the time to test the putative class definition should be at class certification, not now. One important function of a putative class definition is to toll the statute of limitations for all putative class members until such time as the case is over or the class certification motion is denied.[17] Prematurely limiting the scope of the putative class definition without proper discovery may cause premature running of the statute of limitations for numerous victims. Furthermore, it is well understood that a class definition can be revised and changed over time and that the Court had considerable discretion in

---

[17] In *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974), the Supreme Court recognized that a timely filed class action tolls the applicable statute of limitations for all persons whose individual claims are encompassed by the class action complaint. *See also Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983).

this regard. It is premature to resolve the issue of appropriate scope of the class definition until the Rule 23 class certification stage.

Plaintiff is aware that the facts herein allege upcoding arising out of Team Health providers' services occurring in emergency rooms only. However, it is also known that Team Health staffs hospitals in areas beyond the emergency department, such as hospitalist and anesthesiologist positions. Two past cases involving Team Health affiliates alleged overbilling outside of normal emergency room staffing: *United States ex rel. Oughatiyan v. IPC the Hospitalist Co., Inc*., No. 09-C-5418, 2015 U.S. Dist. LEXIS 19066, 2015 WL 718345 (N.D. Ill. Feb. 17, 2015) (denying in part motion to dismiss FCA claim of Team Health hospitalist overbilling); *U.S. ex rel. Mamalakis vs. Anesthetix Management LLC*, No. 19-3117, 2021 U.S. App. LEXIS 36193, 2021 WL 5818476 (Dec. 8, 2021) (alleging Team Health anesthesiologist overbilling). Accordingly, pending narrowing of the issues in discovery, the Plaintiff has alleged a broadly inclusive putative class of payors.

> **G. Regardless of whether "Individualized Patient-by-Patient Review is Required to Determine Whether Defendants Upcoded a Claim," obviously hundreds or thousands of claims may be analyzed.**

Defendants argued that somehow it will be logistically impossible to work through the numerous claims that Defendants have sent to Plaintiff and to putative class members, and that individual differences will swamp any effort to engage in a uniform inquiry. Def. Br. 20. Not so. The face of the *United HealthCare* and the *Celtic Ins*. complaints reveal that both companies reviewed or had their coding experts review thousands of claims. It was logistically possible to go through many claims there, and there is no reason to believe that will not be the case here.

Furthermore, the *United HealthCare* complaint encompasses Team Health claims and bills sent to numerous different insurance plans, some of which United HealthCare directly insured, and

others for which United was just the administrator. In other words, the purported distinctions from plan to plan and from claim to claim presented no barrier to an aggregated handling of all of the thousands or millions of claims in one case. The same analysis equally applies here.

In this part of their brief as elsewhere, Defendants principally rely not on cases ruling on motions to strike, but cases ruling on class certification motions. Those cases are inapposite.

Defendants also ignore the option of sampling. The use of random sampling of cohorts of claims, files or bills under proper parameters is increasingly used in class actions to assess issues in discovery without having to review redundant numbers of documents. Under Plaintiff's theory of the case, it is likely that sampling can be used to clarify the issues. While Defendants may disagree, that is not an issue for consideration at this time.

**H.** **The Court should reject Defendants' argument that "Out-of-Network Class Members Made Inherently Individualized Decisions Regarding Whether to Pay Claims and at What Rates."**

Citing no evidence in the case since there is none to cite, Defendants baldly assert that "[i]ndividualized questions will be prevalent for the non-contracted, out-of-network payors in the class, each of whom may have had its own policies, procedures, and methodologies for reviewing claims and determining whether and how to pay." Def. Br. 22. One is left in the dark as to what differing policies, procedures and methodologies, that could have a material impact on the analysis, the Defendants are referring to. Defendants ask for speculation. What the FAC has alleged, meanwhile, is not that payors' approaches materially differ from each other, but precisely the opposite: that payors routinely and commonly rely on the five levels of CPT codes used for emergency department treatment in Team Health's billing. If the CPT code is higher, the payor pays more. If Team Health billed the emergency room visit as a level one, then the pay rate will be one amount. If it billed as a level two, the rate will be higher. *See* FAC ¶¶ 12, 107. The FAC

alleges that Plaintiff and class members were similarly defrauded by this scheme. Defendants cannot overcome the FAC's well-pled allegations simply by speculating without supporting allegation or evidence that somehow other payors used payment methodologies which were not calibrated to the CPT codes.

I. **Defendants' argument that "In-Network Class Members Are Subject to Hundreds, if Not Thousands, of Unique Network Participation Agreements" fails.**

Defendants contend that "[f]or in-network provider claims, the Parties and the Court would need to analyze the terms of hundreds, if not thousands, of unique network participation agreements. Many participating provider contracts contain mandatory arbitration clauses that would give rise to unique defenses for a substantial number of putative class members." Def. Br. 23. This like the arguments above simply posits sheer speculation, invites the Court to accept Defendants' prediction of future of discovery, and asks the Court to strike class allegations based on arguments neither ripe nor appropriate until class certification.

Furthermore, Plaintiff contests this vision of the future. Plaintiff believes that what discovery will show is that regardless of the internal policies of the particular payor, that payors, like the others, paid Team Health more for a bill with a higher CPT code and less for a bill with a lower CPT code. Furthermore, Plaintiff believes that same basic logic will apply regardless of whether a given payor has an agreement with Team Health or not, or is categorized as being 'in-network' or not. With regard to the hypothetical future presence of arbitration clauses in discovery, Plaintiff shows that such a defense is not an automatic bar to class certification. *GGNSC Arkadelphia, LLC v. Lamb ex rel. Williams*, 2015 Ark. 253, 465 S.W.3d 826, 835 (Ark. 2015) (rejecting argument that in context of class certification motion, "predominance is defeated because five of the forty-three named class representatives and some of the putative class members

20

may have entered into optional arbitration agreements").  It is premature for this Court to be asked to decide whether some class members signed arbitration agreements or whether the class definition may need to be modified as a result.  *Compare Andersen v. Briad Rest. Grp., LLC*, 333 F.R.D. 194, 207(D. Nev. 2019) (class certified that excluded those who had signed arbitration agreements).

**J.**     **The Court Should reject the Argument that "Class Members are Subject to Unique Geographic, Demographic, State Law, and Related Factors Impacting Their Claims."**

Defendants argue that a class cannot possibly be certified, because "TeamHealth physicians provided emergency medical services to Plaintiff's plan members at eight different medical centers in Western North Carolina."  Def. Br. 24.  This argument is nonsensical.  What is relevant to the claim and to commonality is that all of these services were medical services routed through the common coding and billing facility in the Team Health enterprise, where upcoding occurred.  Defendants further make arguments based on the fact that one hospital is a trauma center and "acuity level" factors will create insuperable difficulties in certifying a class.  Needless to say, all of these contentions are both speculative and massively premature, and all should thus summarily be disregarded.

Defendants note there is pending antitrust litigation against the HCA hospital system, which system owns hospitals in Western North Carolina.   Def. Br. 25; *see Davis v. HCA Healthcare, Inc.,* No. 21-cv-03276, 2022 NCBC 52, 2022 NCBC LEXIS 108, 2022 WL 4354142 (N.C. Super. Ct. Sept. 19, 2022) (denying in part antitrust claim alleging inter alia that HCA Healthcare's monopolistic and anticompetitive conduct has inflated healthcare prices for ordinary consumers).  Of course, healthcare prices can go up because of more than one factor.  The mere

fact that HCA is being sued for antitrust violations including at hospitals which Team Health staffs has no bearing on the present motion.

**K.** __Plaintiff is entitled to proceed with its request for certification under Rules 23(b)(1) and 23(b)(2).__

Defendants contest certification under these subparts at Def Br. 27-31. It is premature for the Court to consider the validity of certification under Rule 23(b)(1) or 23(b)(2). These avenues to class certification preserve the ability to seek non-monetary relief for the class. For example, Rule 23(b)(2) provides that a class action may be maintained if Rule 23(a) is satisfied and if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Here, Plaintiff is having an ongoing situation in which it receives upcoded bills from Defendants. Under these facts, Plaintiff may be entitled to declaratory and injunctive prospective relief by which the Court orders an end to the upcoding. See Plaintiff's brief opposing the motion to dismiss, explaining the legal basis for the request for declaratory relief. Just as Plaintiff may be entitled to such relief, so too many be class members. It is premature to summarily strike the claim. Furthermore, Plaintiff is entitled to allege damages and equitable relief in the alternative under Rule 8(d), and Plaintiff should not be required to make an election of remedies at this time.

**L.** __Plaintiffs are entitled to proceed with their request for alternative certification under Rule 23(c)(4).__

Defendants challenge Plaintiff's ability to certify an "issue class." Def. Br. 31-32. This challenge should be rejected. Rule 23(c)(4) expressly allows the option of class certification not for the case as a whole or a claim as a whole, but rather, just on a defined issue. *See* Fed. R. Civ. P. 23(c)(4) ("Particular Issues. When appropriate, an action may be brought or maintained as a

class action with respect to particular issues."). There are numerous examples of courts approving the potential use of an issue class in the appropriate case. *See, e.g., Martin v. Behr Dayton Thermal Products LLC,* 896 F.3d 405, 405 (6th Cir. 2018) (affirming certification of 7 issue classes); *In re Flint Water Cases,* 558 F. Supp. 3d 459, 501, 2021 WL 3887687 (E.D. Mich. 2021).

In the present case, it is impossible to know whether a request for an issue class may ultimately be made, in connection with a prospective motion for class certification, because the parties have not yet undergone any discovery. Plaintiff is hopeful that certification of entire claims will be appropriate under Rule 23(a) and (b)(3). However, until such time as they are obligated to file their motion for class certification, the Rules impose no duty on Plaintiff to particularize its notice-pleading allegation further. There is thus no basis for striking the issue class allegations from the FAC.

## Conclusion

Plaintiff respectfully requests that Defendants' motion to strike be denied.

23

Dated:  April 14, 2023.

s/John Hughes
Mona L. Wallace (N.C. Bar No. 09021)*
John S. Hughes (N.C. Bar No. 22126)*
Olivia Smith (N.C. Bar No. 58375)*
WALLACE & GRAHAM, P.A.
525 N. Main St.
Salisbury, NC 28144
704-633-5244 Telephone
mwallace@wallacegraham.com
jhughes@wallacegraham.com
osmith@wallacegraham.com

Mary Parker #06016
Parker & Crofford
5115 Maryland Way
Brentwood, TN 37027
615-244-2445 Tel
615-255-6037 Fax
mparker@parker-crofford.com

Janet Varnell, Esq.*
Florida Bar No. 0071072
VARNELL AND WARWICK, P.A.
1101 E. Cumberland Ave.
Suite 201H, #105
Tampa FL 33602
Tel.: (352) 753-8600
jvarnell@vandwlaw.com

Robert N. Hunter, Jr.*
Higgins Benjamin, PLLC
301 N Elm St Suite 800
Greensboro, NC 27401
Phone: (336) 275-7577
rnhunterjr@greensborolaw.com

*admitted pro hac vice.

*Attorneys for Plaintiff*

24

## CERTIFICATE OF SERVICE

This will confirm and certify that the below-signed attorney of record effectuated service of the above document by filing the document with the Court's ECF system which will automatically electronically serve all counsel of record.

Dated: April 14, 2023.

                                                  s/John Hughes
                                                  Mona L. Wallace (N.C. Bar No. 09021)
                                                  John S. Hughes (N.C. Bar No. 22126)
                                                  Olivia Smith (N.C. Bar No. 58375)
                                                  WALLACE & GRAHAM, P.A.
                                                  525 N. Main St.
                                                  Salisbury, NC 28144
                                                  704-633-5244 Telephone
                                                  mwallace@wallacegraham.com
                                                    jhughes@wallacegraham.com
                                                  osmith@wallacegraham.com