IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| BUNCOMBE COUNTY, NORTH CAROLINA, individually and on behalf of all those similarly situated,<br><br>   Plaintiff,<br><br>v.<br><br>TEAM HEALTH HOLDINGS, INC., AMERITEAM SERVICES, LLC, and HCFS HEALTH CARE FINANCIAL SERVICES, LLC,<br><br>   Respondents. | Case No. 3:22-cv-00420-DCLC-DCP |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS FROM THE FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i
TABLE OF AUTHORITIES ..................................................................................................... ii
INTRODUCTION ...................................................................................................................... 1
REPLY ARGUMENT ................................................................................................................ 1
I.      There is No Reason to Delay Striking the Class Allegations ............................................. 1
II.     Plaintiff Bears the Burden of Plausibly Establishing that Rule 23's Requirements Can Be Satisfied in this Case ................................................................................................................ 2
III.    Plaintiff Cannot Proceed Under Rule 23(b)(1) or (b)(2) ...................................................... 3
IV.    Plaintiff's Inability to Satisfy the Requirements of Rule 23(b)(3) is Clear from the Face of the FAC ........................................................................................................................ 4
        A.      Plaintiff Continues to Brush Aside the Complex, Varied, and Individualized Components of CPT Coding for the Evaluation and Management of Emergency Room Patients ............................................................................................................. 4
        B.      Plaintiff's Theory of Harm is Inextricably Tied to Millions of Individual Inquires, Precluding Plaintiff from Establishing Predominance and Superiority ................... 6
        C.      Plaintiff's Proposed Nationwide Unjust Enrichment Class Would Implicate Differing Laws of All Fifty States, Precluding Predominance ................................ 8
        D.      Plaintiff Fails to Explain How Rule 23(b)(3)'s Analysis Can be Satisfied as to Any Particular Issue ........................................................................................................ 9
CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

Page(s)

Cases

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
 727 F.3d 502 (6th Cir. 2013) ............................................................................................... 2
*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
 568 U.S. 455 (2013) ............................................................................................................ 1
*AT&T Mobility LLC v. Concepcion*,
 563 U.S. 333 (2011) ............................................................................................................ 2
*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ............................................................................................................ 2
*Colley v. Procter & Gamble Co.*,
 No. 1:16-CV-918, 2016 WL 5791658 (S.D. Ohio Oct. 4, 2016) ........................................ 9
*Compound Prop. Mgmt. LLC v. Build Realty, Inc.*,
 343 F.R.D. 378 (S.D. Ohio 2023) ....................................................................................... 8
*EEOC v. Wooster Brush Co. Emps. Relief Ass'n*,
 727 F.2d 566 (6th Cir. 1984) ............................................................................................... 3
*Elson v. Black*,
 56 F.4th 1002 (5th Cir. 2023) .............................................................................................. 8
*Gerboc v. ContextLogic, Inc.*,
 867 F.3d 675 (6th Cir. 2017) ............................................................................................... 9
*In re Am. Med. Sys., Inc.*,
 75 F.3d 1069 (6th Cir. 1996) ....................................................................................... 3, 5, 9
*In re Asacol Antitrust Litig.*,
 907 F.3d 42 (1st Cir. 2018) ................................................................................................. 8
*In re Nat'l Prescription Opiate Litig.*,
 976 F.3d 664 (6th Cir. 2020) ............................................................................................. 10
*In re Telectronics Pacing Sys., Inc.*,
 221 F.3d 870 (6th Cir. 2000) ........................................................................................... 3, 7
*JPMorgan Chase Bank, N.A. v. Browning*,
 750 S.E.2d 555 (N.C. Ct. App. 2013) ................................................................................. 9
*Klay v. Humana, Inc.*,
 382 F.3d 1241 (11th Cir. 2004) ........................................................................................... 8
*Martin v. Behr Dayton Thermal Prod. LLC*,
 896 F.3d 405 (6th Cir. 2018) ............................................................................................. 10
*Oom v. Michaels Cos.*,
 No. 1:16-cv-257, 2017 WL 3048540 (W.D. Mich. July 19, 2017) ..................................... 9
*Pilgrim v. Universal Health Card, LLC*,
 660 F.3d 943 (6th Cir. 2011) ........................................................................................ passim
*Pipefitters Loc. 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*,
 654 F.3d 618 (6th Cir. 2011) ........................................................................................... 2, 6
*Russell v. Forster & Garbus, LLP*,
 No. 17-CV-4274(JS)(AYS), 2020 WL 1244804 (E.D.N.Y. Mar. 16, 2020) ....................... 3
*Smith v. Cash Am. Int'l, Inc.*,
 No. 1:15-CV-00760-MRB, 2019 WL 2352921 (S.D. Ohio June 4, 2019) .......................... 3

*Sprague v. Gen. Motors Corp.*,
    133 F.3d 388 (6th Cir. 1998) .................................................................................................. 8
*Tarrify Props., LLC v. Cuyahoga Cnty.*,
    37 F.4th 1101 (6th Cir. 2022) ................................................................................................ 4
*Taylor v. Unumprovident Corp.*,
    No. 1:03–CV–1009, 2005 WL 3448052 (E.D. Tenn. Dec. 14, 2005) ....................................... 6
*Vega v. T-Mobile USA, Inc.*,
    564 F.3d 1256 (11th Cir. 2009) .............................................................................................. 9
*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)............................................................................................................ 4, 7
*Weathers v. Peters Realty Corp.*,
    499 F.2d 1197 (6th Cir. 1974) ................................................................................................ 3
*Young v. Nationwide Mut. Ins. Co.*,
    693 F.3d 532 (6th Cir. 2012) .................................................................................................. 6

Rules

Fed. R. Civ. P. 9(b)-(c) ................................................................................................................ 2
Fed. R. Civ. P. 23 ...................................................................................................................... 10
Fed. R. Civ. P. 23(b)(3).................................................................................................... 7, 9, 10
Fed. R. Civ. P. 23(c)(4)................................................................................................................ 9

Other Authorities

1 McLaughlin on Class Actions § 3:4 (19th ed. 2022) ................................................................ 3
1 McLaughlin on Class Actions § 5:23 (19th ed.) ...................................................................... 7

**INTRODUCTION**

There are certain cases where class certification is so palpably improper that it is appropriate to strike the class allegations under Rules 12 and 23. This is one of those cases.

Plaintiff's Response to Defendants' Motion to Strike the Class Allegations from the First Amended Complaint ("FAC") fails to explain how the facts alleged in the FAC—even if proven through discovery—could plausibly satisfy the requirements of Rule 23. Instead, Plaintiff asks the Court to hold off on deciding this issue so that Plaintiff can take certification-related discovery without any forecast as to what such discovery might reveal. This requested delay is unnecessary because the allegations in the FAC demonstrate that no amount of discovery will render Plaintiffs' sprawling class claims proper under Rule 23. The class allegations should be stricken from the FAC, and this action should proceed, if at all, on behalf of the named Plaintiff alone.

**REPLY ARGUMENT**

**I.   There is No Reason to Delay Striking the Class Allegations**

The central contention of Plaintiff's Response is that it is premature to evaluate, at the pleading stage, whether Plaintiff can plausibly satisfy Rule 23's requirements. (*See* Response, Doc. 45 at PageID #: 750, 752-56, 758-61, 763-65, 768-70). That is incorrect. "Rule 23(c)(1)(A) says that the district court should decide whether to certify a class '[a]t an early practicable time' in the litigation, and nothing in the rules says that the court must await a motion by the plaintiffs." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011). As in *Pilgrim*—where the Sixth Circuit affirmed the district court's striking of class allegations at the pleading stage—addressing this issue now is appropriate because neither "discovery [nor] more time" will fix the problems inherent in Plaintiff's class certification allegations. *Id.*

Addressing facially invalid certification requests as early as possible is important because "class actions can entail a risk of 'in terrorem' settlements." *Amgen Inc. v. Conn. Ret. Plans & Tr.*

1

*Funds*, 568 U.S. 455, 474 (2013). That risk is amplified when, as in this case, plaintiffs assert fraud claims that have the potential to tarnish defendants' reputation and that carry the specter of treble damages. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007) (explaining that fraud is a "subject[] understood to raise a high risk of abusive litigation" (citing Fed. R. Civ. P. 9(b)-(c))). The risk is also amplified when plaintiffs file serial class actions and—in the case of Risk Management Inc. ("RMI")—*identical* vexatious lawsuits that drain the parties' and the court's resources. (*See Risk Mgmt., Inc. v. Team Health Holdings, Inc.*, No. 3:22-cv-00456-DCLC-DCP, Doc. 28 at PageID #: 208-09, Doc. 29 at PageID #: 219-23).

The resource-draining nature of class actions does not begin with certification. Even traditional "discovery imposes costs—not only on defendants but also on courts and society." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013). These costs are increased where the plaintiff seeks to conduct litigation on a classwide basis. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 348 (2011) (emphasizing the costliness of class litigation); *Twombly*, 550 U.S. at 558-59 (noting the high cost of discovery in sprawling antitrust class action); *Pipefitters Loc. 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 630 (6th Cir. 2011) ("Given the huge amount of judicial resources expended by class actions, particular care in their issuance is required.").

For the reasons addressed in Defendants' Motion to Strike and below, the Court should reject Plaintiff's invitation to delay the inevitable and should strike the class allegations.

## II. Plaintiff Bears the Burden of Plausibly Establishing that Rule 23's Requirements Can Be Satisfied in this Case

Plaintiff repeatedly contends that it should not have to make any showing with regard to Rule 23's requirements at the pleading stage of litigation. (*See, e.g.*, Response, Doc. 45 at PageID #: 755 ("Plaintiff at this stage should not have to establish commonality, typicality or any of the

2

Case 3:22-cv-00420-DCLC-DCP   Document 49   Filed 04/28/23   Page 6 of 16
PageID #: 829

other Rule 23 requirements; . . ."). That is incorrect. "Regardless of the moving party, 'the plaintiff will bear the burden of establishing the certification requirements of Rule 23.'" *Russell v. Forster & Garbus, LLP*, No. 17-CV-4274(JS)(AYS), 2020 WL 1244804, at *3 (E.D.N.Y. Mar. 16, 2020) (citation omitted); *accord* 1 McLaughlin on Class Actions § 3:4 (19th ed. 2022) (endorsing the standard set forth in *Russell*); *see also Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974) ("Mere repetition of the language of Rule 23(a) is not sufficient. There must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled."). While a plaintiff is not expected to put forth proof of the Rule 23 elements at the pleading stage, Rule 23 still places the burden **on Plaintiff** to plead sufficient facts demonstrating that its class claims are plausible. *See Pilgrim*, 660 F.3d at 946, 949; *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

### III. Plaintiff Cannot Proceed Under Rule 23(b)(1) or (b)(2)

Plaintiff contends that it "is entitled to proceed with its request for certification under Rules 23(b)(1) and 23(b)(2)," but it fails to address the binding authority to the contrary set forth in Defendants' Memorandum. (Response, Doc. 45 at PageID #: 769). Those cases are clear: where a plaintiff seeks individualized damages for each class member, as this Plaintiff does, an opportunity to opt-out of the class is required, and class certification is unavailable under either Rule 23(b)(1) or (b)(2). *In re Telectronics Pacing Sys., Inc.*, 221 F.3d 870, 877-78, 881 (6th Cir. 2000). Plaintiff's nebulous request for alternative injunctive relief to stop unspecified "upcoding" is without merit. *See Smith v. Cash Am. Int'l, Inc.*, No. 1:15-CV-00760-MRB, 2019 WL 2352921, at *6 (S.D. Ohio June 4, 2019) (striking Plaintiff's "alternative" request for certification under Rule 23(b)(2) where plaintiff sought a generic injunction to "stop [] deceptive and misleading practices"); *see also EEOC v. Wooster Brush Co. Emps. Relief Ass'n*, 727 F.2d 566, 576 (6th Cir. 1984) (explaining that conclusory "obey the law" injunctions are void).

3

Case 3:22-cv-00420-DCLC-DCP   Document 49   Filed 04/28/23   Page 7 of 16
PageID #: 830

Because Plaintiff seeks individualized damages for each class member, (FAC ¶¶ 10, 113, 123, 117-18), precedent constrains Plaintiff to proceeding under Rule 23(b)(3) alone. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011) ("[W]e think it clear that individualized monetary claims belong in Rule 23(b)(3).").

**IV.     Plaintiff's Inability to Satisfy the Requirements of Rule 23(b)(3) is Clear from the Face of the FAC**

Because Plaintiff is constrained to pursue its class action under Rule 23(b)(3), it must allege facts plausibly establishing "each of the four prerequisites under Rule 23(a)," *Pilgrim*, 660 F.3d at 945-46, *and* each of the prerequisites under Rule 23(b)(3), including predominance and superiority, *Tarrify Props., LLC v. Cuyahoga Cnty.*, 37 F.4th 1101, 1105 (6th Cir. 2022). Plaintiff provides little analysis of how these requirements can be satisfied based on the facts and legal theories advanced in the FAC. Instead, Plaintiff relies on the following: (1) other plaintiffs have levied similar unproven allegations of unlawful upcoding; (2) those plaintiffs' unproven claims similarly involved the application of Current Procedural Terminology (CPT) codes; and (3) some courts have certified RICO and unjust enrichment classes or declined to strike such class allegations. (Response, Doc. 45 at PageID #: 756-68). Plaintiff also contends that Defendants "ignore the option of sampling," but Plaintiff does not explain ***how*** sampling can serve as the generalized proof necessary to establish predominance. (*Id.* at PageID #: 766).

**A.     Plaintiff Continues to Brush Aside the Complex, Varied, and Individualized Components of CPT Coding for the Evaluation and Management of Emergency Room Patients**

While Plaintiff has declined its opportunity to outline its Rule 23(b)(3) theory for the Court, it is clear that any such theory is unworkable. In the Response, as in the FAC, Plaintiff falls back on conclusory terms like "upcoding" and "uniform standards" without any serious attempt to grapple with the actual proof that would be required to prove its theory of fraud for an individual

4

claim, let alone thousands of payors and millions of claims on a classwide basis. (*See, e.g.*, *id.* at PageID #: 757 (arguing in conclusory fashion that differences in patient conditions are "distinctions without a difference")). Plaintiff cannot prevail in this case simply by saying that a certain claim was coded as a "5" but should have been a "4" because "accepted standards" were not met. Those are conclusions. Plaintiff must instead prove ***how*** and ***why*** Defendants intentionally misapplied the American Medical Association's ("AMA") Current Procedural Terminology ("CPT") guidelines to the millions of unique ER presentations encompassed in its putative class. *See Am. Med. Sys.*, 75 F.3d at 1081 (emphasizing that proof of each class members' claims would vary based on facts unique to each class member). Plaintiff makes no attempt to explain how Defendants allegedly misapplied the AMA's key components and sub-elements in any common manner, other than the conclusory assertion that they did so improperly. Those components bear repeating because they are noticeably absent from the Response:

1. The first key component, a patient's history, may include personal, family, and social history and descriptions of location, quality, severity, timing, context, modifying factors, and associated signs and symptoms. The extent of history is dependent upon clinical judgment and the nature of the presenting problem(s).

2. The second key component, the physical examination, depends in part on the nature of the presenting problem, which may be minimal, self-limited, low severity, moderate severity, or high severity, leading to examinations that may be categorized as problem focused, expanded problem focused, detailed, or comprehensive.

3. The third key component, medical decision making, can be categorized as straightforward, low complexity, moderate complexity, and high complexity. Determining which category the decision making falls into requires analysis of the number of diagnoses and/or management options that must be considered, the amount and/or complexity of medical records, diagnostic tests, and other information that must be analyzed, and the risk of significant complications, morbidity, and comorbidities associated with the patient's presenting problem(s), the diagnostic procedure(s), and/or the possible management options.

(*See* Defs.' Mem. in Supp. of Mot. to Dismiss Pl.'s FAC, Doc. 35 at PageID #: 471-72). For the reasons set out in the Motion to Strike and below, it is simply implausible that common issues will

predominate and that a class action will be a superior way of determining whether Defendants properly applied those guidelines to millions of individualized ER encounters over several years. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2012) ("Where many individual inquiries are necessary, a class action is not a superior form of adjudication." (citing *Pipefitters*, 654 F.3d at 631)).

### B. Plaintiff's Theory of Harm is Inextricably Tied to Millions of Individual Inquires, Precluding Plaintiff from Establishing Predominance and Superiority

Plaintiff's Response acknowledges that its sprawling class theory includes "millions" of individual medical claims, and Plaintiff embraces the necessity of individualized patient-by-patient review to determine whether upcoding was present in any particular claim. (Response, Doc. 45 at PageID #: 766). That should be the end of Plaintiffs' class claims. "Where many individual inquiries are necessary, a class action is not a superior form of adjudication." (*See* Defs.' Mem. in Supp. of Mot. to Strike Class Allegations from Pl.'s FAC, Doc. 38 at PageID #: 544-46 (quoting and citing *Young*, *Pipefitters*, and *Tarrify*)). These individual inquiries would likewise predominate over any common issues in the case. (*See id.* at PageID #: 535-44).

Instead of addressing this precedent on superiority[1] and predominance set out in Defendants' Motion to Strike, Plaintiff speculates that the task will be "logistically possible" because plaintiffs in two separate **non-class** actions have alleged that they "reviewed or had their coding experts review thousands of claims." (Response, Doc. 45 at PageID #: 765). Putting aside the fact that those complaints contain hotly disputed allegations, neither of those plaintiffs faces the burden Plaintiff does here: to show that "questions of law or fact common to class members

---

[1] Plaintiff's Response does not address superiority at all. A responding party waives opposition to an opponent's argument when it fails to respond to that argument. *Taylor v. Unumprovident Corp.*, No. 1:03–CV–1009, 2005 WL 3448052, at *2 (E.D. Tenn. Dec. 14, 2005).

6

predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Nor do those plaintiffs seek a judicial disposition that would dispose of millions of claims and would bind thousands of absent and disparate class members. *See Telectronics Pacing Sys.*, 221 F.3d at 881 ("Class certification . . . necessarily compromises various rights of absent class members."). Whether it is "logistically possible" to analyze millions of claims for a single payor in the same trial is not the proper question in the class action context: the issue is whether the harms alleged by the class members "can be productively litigated at once." *Dukes*, 564 U.S. at 350. The answer is decidedly no.

In passing, Plaintiff raises the "option of sampling" but then says that it is "not an issue for consideration at this time." (Response, Doc. 45 at PageID #: 766). Plaintiff cites no authority to support these contentions (either that sampling is proper, or that the Court should sweep the issue under the rug for now) and offers no explanation for how sampling could supplant the individualized patient-by-patient expert review that Plaintiff alleges is necessary to uncover this type of alleged fraud. (*Id.*; FAC ¶ 3). Any method of generalized proof used in class proceedings that deprives defendants of their substantive rights as to individual claims violates the Rules Enabling Act. *Dukes*, 564 U.S. at 367; 1 McLaughlin on Class Actions § 5:23 (19th ed.). Plaintiff's suggestion that statistical sampling could be used somehow to prove that Defendants committed fraud in connection with millions of unexamined claims is contrary to law because it would abridge Defendants' rights to offer individualized proof on the elements of Plaintiff's claims and raise defenses to such claims. *See Dukes*, 564 U.S. at 367. For example, such a hypothetical statistical sample would impair Defendants' ability to dispute whether Defendants materially misrepresented a fact in connection with each medical claim and whether the same proximately

7

caused harm to each class member.[2] *See, e.g.*, *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (reversing certification of ERISA claims where the district court improperly allowed "testimony from more than three hundred class members in an effort to obtain a purportedly representative sample of the representations and communications made" by defendant); *In re Asacol Antitrust Litig.*, 907 F.3d 42, 53 (1st Cir. 2018) (holding that method of generalized proof violated Rules Enabling Act because it deprived the defendants of their ability to contest whether unnamed class members could "prove an element of liability").

### C. Plaintiff's Proposed Nationwide Unjust Enrichment Class Would Implicate Differing Laws of All Fifty States, Precluding Predominance

Plaintiff contends that evaluating differences in unjust enrichment law across the fifty states is premature, and variations in such laws will not "necessarily" preclude a finding that common questions predominate. (Response, Doc. 45 at PageID #: 763-64). But the Sixth Circuit's *Pilgrim* decision establishes that the pleadings stage is the proper juncture at which to evaluate legal impediments to certification, like the fact that different plaintiffs' claims will be governed by different laws. *See* 660 F.3d at 946-49; *accord Elson v. Black*, 56 F.4th 1002, 1007 (5th Cir. 2023) (class allegations properly struck where "different state laws govern different" class members' claims). Indeed, discovery is unnecessary to determine that each class member's claims will be

---

[2] In this regard, the *Klay* decision that Plaintiff relies on involved quite different facts. There, the plaintiffs alleged a common and generic misrepresentation: "that the defendants would honestly pay physicians the amounts to which they were entitled." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1258 (11th Cir. 2004). Those plaintiffs also alleged that defendants employed software that *uniformly* manipulated the amount paid to those physicians. *See id.* Similarly, in *Compound Prop. Mgmt. LLC v. Build Realty, Inc.*, 343 F.R.D. 378, 407 (S.D. Ohio 2023), plaintiffs alleged a common set of misrepresentations where a core issue was the "legal meanings of certain agreements." Here, by contrast, Plaintiff alleges that Defendants' human coders made different misrepresentations as to **each unique ER encounter submitted to Plaintiff**. Proving that Defendants intentionally misrepresented material facts when applying the AMA CPT guidelines to each set of medical records—and that such misrepresentations caused damages because the recipient relied on them—will not resolve the same issues for any other claim submitted to any other class member.

8

Case 3:22-cv-00420-DCLC-DCP   Document 49   Filed 04/28/23   Page 12 of 16
PageID #: 835

governed by the law of that class member's home state—a result that Plaintiff does not dispute—and "[i]f more than a few of the laws of the fifty states differ, the [Court] would face an impossible task of instructing a jury on the relevant law." *Am. Med. Sys.*, 75 F.3d at 1085 (citation omitted).

Because unjust enrichment laws vary across states, such variations will predominate over any common issues, and Plaintiff's nationwide unjust enrichment class should be stricken. *See Pilgrim*, 660 F.3d at 949; *Colley v. Procter & Gamble Co.*, No. 1:16-CV-918, 2016 WL 5791658, at *7 (S.D. Ohio Oct. 4, 2016) ("Varying state laws preclude Plaintiffs from pursuing an unjust enrichment claim on behalf of a nationwide class."). If Plaintiff abandons its nationwide unjust enrichment class and opts for a North Carolina unjust enrichment class (*see* Response, Doc. 45 at PageID #: 763), such class remains improper because North Carolina law requires that each plaintiff proving unjust enrichment establish that the defendant's retention of the particular benefit is inequitable. *See JPMorgan Chase Bank, N.A. v. Browning*, 750 S.E.2d 555, 559-60 (N.C. Ct. App. 2013). Such analysis is necessarily specific to each class member's particular interactions with Defendants. *Cf. Gerboc v. ContextLogic, Inc.*, 867 F.3d 675, 679 (6th Cir. 2017) ("ContextLogic was not unjustly enriched: Gerboc got what he paid for."). This inherently individualized inquiry is fundamentally inconsistent with representative litigation. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009); *Oom v. Michaels Cos.*, No. 1:16-cv-257, 2017 WL 3048540, at *7 (W.D. Mich. July 19, 2017).

> **D. Plaintiff Fails to Explain How Rule 23(b)(3)'s Analysis Can be Satisfied as to Any Particular Issue**

Plaintiff contends that it should not be required to plausibly identify issues for which common questions predominate in order to maintain its fallback request for a Rule 23(c)(4) issues class. (Response, Doc. 45 at PageID #: 769-70). But an issues class under Rule 23(c)(4) is only permitted where "common questions predominate within *certain issues* and where class treatment

9

of those issues is the superior method of resolution." *Martin v. Behr Dayton Thermal Prod. LLC*, 896 F.3d 405, 413 (6th Cir. 2018) (emphasis added). Because Plaintiff has declined to explain how the "weighty requirements of Rule 23(b)(3)" could plausibly be satisfied as to any "certain issues," Plaintiff's conclusory request for an issues class should be stricken with the remainder of its class allegations. *In re Nat'l Prescription Opiate Litig.*, 976 F.3d 664, 675 (6th Cir. 2020) ("The issue class device permits a court to split common issues off for class treatment; it does not provide an end-run around the weighty requirements of Rule 23(b)(3).").

## CONCLUSION

For the reasons discussed in Defendants' Motion to Strike and Memorandum in Support thereof (Docs. 37, 38), and for the those above, it is clear from the face of the FAC that Plaintiff's suggested class cannot be certified under Rule 23. Defendants respectfully request that the class action allegations be stricken and that this action proceed, if at all, on behalf of the named Plaintiff alone.

Respectfully submitted,

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.**


*/s/ Gary C. Shockley*
Gary C. Shockley (BPR 010104)
Caldwell G. Collins (BPR 028452)
1600 West End Avenue, Suite 2000
Nashville, Tennessee 37203
(615) 726-5704 (phone)
(615) 744-5704 (fax)
gshockley@bakerdonelson.com
cacollins@bakerdonelson.com

Nora A. Koffman (BPR 038025)
602 Sevier Street, Suite 300
Johnson City, TN 37604
(423) 928-0181 (phone)
(423) 928-5694 (fax)
nkoffman@bakerdonelson.com

Matthew S. Mulqueen (BPR 028418)
165 Madison Avenue, Suite 2000
Memphis, TN 38103
(901) 526-2000 (phone)
(901) 577-2303 (fax)
mmulqueen@bakerdonelson.com

*Attorneys for Defendants*

11

# CERTIFICATE OF SERVICE

       I hereby certify under Rule 5 of the Federal Rules of Civil Procedure that a true and exact copy of the foregoing Reply Memorandum in Support of Defendants' Motion to Strike was served on the following counsel of record via operation of the Court's electronic filing system:

Mary Parker
PARKER & CROFFORD
5115 Maryland Way
Brentwood, TN 37027
Phone: (615) 244-2445
mparker@parker-crofford.com

Mona L. Wallace
John S. Hughes
Olivia Smith
WALLACE & GRAHAM, P.A.
525 N. Main St.
Salisbury, NC 28144
Phone: (704) 633-5244
mwallace@wallacegraham.com
jhughes@wallacegraham.com
osmith@wallacegraham.com

Janet Varnell
VARNELL AND WARWICK, PA
1101 E. Cumberland Avenue
Suite 201H, #105
Tampa, FL 33602
Phone: (352) 753-8600
jvarnell@vandwlaw.com

Robert N. Hunter, Jr.
HIGGINS BENJAMIN, PLLC
301 N Elm St Suite 800
Greensboro, NC 27401
Phone: (336) 275-7577
rnhunterjr@greensborolaw.com

Dated April 28, 2023.

                                        */s/ Gary C. Shockley*
                                        Attorney