UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| BUNCOMBE COUNTY, NORTH CAROLINA, | ) ) ) |
| | )  3:22-CV-00420-DCLC-DCP |
| Plaintiff, | ) ) |
| v. | ) ) |
| TEAM HEALTH HOLDINGS, INC., et al., | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants Team Health Holdings, Inc.'s ("Team Health Holdings"), Ameriteam Services, LLC's ("Ameriteam"), and HCFS Health Care Financial Services, LLC's ("HCFS") Motion to Dismiss [Doc. 34], Motion to Strike [Doc. 37], and Motion to Stay Discovery [Doc. 40]. Plaintiff Buncombe County, North Carolina ("Buncombe County" or "the County") responded [Docs. 44, 45, 46] and Defendants replied [Docs. 47, 48, 49]. These motions are now ripe for disposition. For the reasons below, Defendants' motions [Docs. 34, 37, 40] are **DENIED**.

**I.  FACTUAL BACKGROUND**

Team Health Holdings is the parent company of several entities, including Ameriteam and HCFS, comprising what Buncombe County refers to as the "TeamHealth organization" [Doc. 30, ¶¶ 18-20]. The organization provides emergency department "staffing and administrative services through a network of subsidiaries, affiliates, and nominally independent entities and contractors" that the County calls the "TeamHealth System" [Doc. 30, ¶ 25]. It is "one of the largest [emergency department] staffing, billing, and collections companies in the United State" [Doc. 30,

¶ 30]. And it achieved its nationwide prominence by acquiring health care provider groups that staff hospital-based emergency departments [*Id.*]. This includes two entities that provide staffing services to hospitals in western North Carolina: Emergency Coverage Corporation ("ECC") and Southeastern Emergency Physicians, LLC ("SEP") [Doc. 30, ¶¶ 1, 21-22, 69].

Buncombe County is the administrator, funder, and sponsor of the Buncombe County Government Group Health Plan, through which the County provides health insurance to its employees [Doc. 30, ¶ 1]. The County outsources claims administration services to Blue Cross Blue Shield of North Carolina ("Blue Cross") [Doc. 30, ¶ 17]. Because emergency services billing companies and providers do not typically submit medical records with their claims, third-party administrators like Blue Cross use an automated claims process [*See* Doc. 30, ¶¶ 36, 60]. Under this system, the provider submits a Centers for Medicare & Medicaid Services ("CMS") Form 1500 with a billing code corresponding to the service provided and attests to the accuracy of the claims information; and the payor, relying on the attestation, pays the claim [*See* Doc. 30, ¶¶ 32 n.10, 34, 36, 60, 66].

Relevant here are the American Medical Association's ("AMA") Current Procedural Terminology ("CPT") codes for emergency department services [Doc. 30, ¶ 1 & n.1]: codes 99281 through 99285 [*Id.*, ¶ 13]. The applicable code is determined by reference to the AMA's guidelines for Evaluation and Management (E/M) Services [Doc. 30, ¶ 3]. Per the guidelines, each code represents a level of medical decision making, beginning with straightforward, to low, then moderate, and finally ending at high [AMA CPT Evaluation and Management (E/M) Code and Guideline Changes, pgs. 3, 6, available at https://www.ama-assn.org/system/files/2023-e-m-

descriptors-guidelines.pdf (last visited September 26, 2023)].[1] Which level applies depends on three elements: (1) the number and complexity of problems addressed by the provider; (2) the amount and/or complexity of the data the provider needs to review and analyze; and (3) the risk of complications and/or morbidity or mortality of patient management [*Id.*, pgs. 6-7]. And the guidelines provide instruction on how to evaluate each element and determine the appropriate level of medical decision making [*Id.*, pgs. 8-13]. Generally, CPT code 99285 "is reserved for relatively rare cases in which the patient is at imminent risk of death or loss of psychological function" and "is appropriate only when extreme circumstances require the most urgent and extensive treatment" [Doc. 30, ¶ 91].

Buncombe County analyzed hundreds of CMS Form 1500s submitted by the TeamHealth organization, the results of which showed that the organization submitted claims under CPT code 99285 63% of the time in 2019 and 60% of the time in 2021 [Doc. 30, ¶¶ 78, 84, 88]. By contrast, providers unaffiliated with the organization submitted claims under CPT code 99285 40% of the time in 2019 and 39% of the time in 2021 [Doc. 30, ¶¶ 80, 84, 88]. And the County plotted the distribution of CPT codes the organization submitted for emergency department services in 2021 with the resulting graph skewed heavily towards higher-level codes [Doc. 30, ¶¶ 86-87, 90]. The County contends that the distribution of codes should instead follow a bell-shaped curve [Doc. 30, ¶ 85 (citing Hospital Outpatient Prospective Payment System and 2007 CY Payment Rates, 71 Fed. Reg. 67960, 68126 (Nov. 24, 2006)].

Buncombe County also had a certified medical coding expert review the medical record chart for five patient encounters to determine whether the claim was accurately coded by the

---

[1] The Amended Complaint incorporates the AMA's CPT guidelines by reference [Doc. 30, ¶ 3 n.1].

TeamHealth organization [Doc. 30, ¶¶ 3, 102]. The expert concluded that in each of the five claims analyzed the CPT code used was higher than the service provided warranted [*See* Doc. 30, ¶ 107]. According to the expert, the following were incorrectly coded: (1) a patient with intermittent palpitations, in no obvious distress, and who was deemed stable and discharged home, was coded at the highest level, 99285, when it should have been 99284; (2) a patient with shortness of breath and asthma who was alert and in no acute distress, was coded at 99285 when it should have been 99284; (3) a patient with abdominal pain and urinary frequency issues and who was prescribed an anti-inflammatory for "mild to moderate pain" and antibiotics, was coded at 99285 when it should have been 99284; (4) a patient with chronic thrombocytopenia who was discharged without additional "workup" was coded at 99284 when it should have been 99282; and (5) a patient with chest pain that was discharged after an unremarkable "work-up," was coded at 99285 when it should have been 99284 [Doc. 30, ¶¶ 107.a-107.e]. In each instance, the County paid between 1.5 to 2.5 times more than it would have had the claim been accurately coded [*Id.*].

Buncombe County alleges that the lop-sided distribution of claims with higher-level CPT codes and the expert's opinion are indicative of an ongoing fraudulent overbilling scheme the TeamHealth organization has been engaged in since at least 2017 [Doc. 30, ¶¶ 14, 85, 87, 92, 101-07]. The County alleges that the TeamHealth organization's practice of overbilling is further evidenced by the allegations in two other lawsuits against Defendants: *Celtic Ins. Co. v. Team Health Holdings, Inc., et al.*, No. 3:20-CV-00523, and *United Healthcare Servs., Inc., et al. v. Team Health Holdings, Inc., et al.*, No. 3:21-CV-00364[2] [Doc. 30, ¶¶ 10, 79, 82-83, 93-96]. The County alleges that the plaintiff in *Celtic Ins. Co.* indicated that: (1) expert analysis of 29 charts

---

[2]     *Celtic Ins. Co.* was voluntarily dismissed at the pleading stage [CM/ECF for E.D. Tenn., Case No. 3:20-CV-00523, Doc. 39]. *United Healthcare Servs., Inc.* survived the pleading stage and is currently in discovery [CM/ECF for E.D. Tenn., Case No. 3:21-CV-00364, Docs. 46, 61].

4

dated between 2015 and 2018 reflected a 62% rate of overbilling; and (2) "nearly two-thirds" of 10,000 bills from 2019 to 2020 reflected overbilling [Doc. 30, ¶ 94]. And the County alleges that the plaintiff in *United Healthcare Servs., Inc.* alleged a 75% rate of overbilling based on a review of 47,000 charts. [Doc. 30, ¶ 95]. The County also alleges that two self-identified TeamHealth organization employees posted workplace reviews on Indeed.com asserting that the organization's coding practices cheat the system to bill as high as possible [*See* Doc. 30, ¶¶ 97-98].

Buncombe County contends that the TeamHealth organization actively conceals the overbilling scheme through its business model and structure [*See* Doc. 30, ¶ 4]. Team Health Holdings and Ameriteam issue policies which govern all entities within the organization [Doc. 30, ¶¶ 18-19]. HCFS provides billing, coding, and collection services to providers affiliated with the TeamHealth System consistent with those policies [*See* Doc. 30, ¶¶ 20, 47, 55]. Team Health Holdings creates or acquires medical provider groups through subsidiary entities, which contract with HCFS for its services [Doc. 30, ¶¶ 24, 30-32, 40, 43-44, 46, 61-62]. The provider groups then contract with hospitals to staff their emergency departments, requiring that they be the exclusive provider of services at that location [*See* Doc. 30, ¶¶ 73-74]. After a patient encounter with a provider affiliated with one of those groups, HCFS receives the medical record, assigns a CPT code, and submits the claim to the appropriate payor using the National Provider Identifier ("NPI") of the group [Doc. 30, ¶¶ 48-49, 55; *see also id.*, ¶¶ 21, 37]. The subsequent payment is then remitted to the TeamHealth organization, as the physicians are paid at a fixed rate [Doc. 30, ¶ 35]. The payor therefore overpays based on CPT code information ostensibly submitted by an independent medical provider unaware that the claims were all prepared by (and consistent with the policies of) the TeamHealth organization [*See* Doc. 30, ¶¶ 6, 8, 46].

## II. PROCEDURAL BACKGROUND

Buncombe County initiated this action against Defendants [Docs. 1, 30]. The County asserts claims for: (1) civil violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) [Doc. 30, ¶¶ 125-63]; (2) conspiracy to violate RICO, 18 U.S.C. § 1962(d) [*Id.*, ¶¶ 164-72]; (3) common law unjust enrichment [*Id.*, ¶¶ 173-84]; and (4) declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 [*Id.*, ¶¶ 185-92]. The County also seeks to bring these claims as the representative of three proposed classes:

> **Unjust Enrichment Class:** All payors and their assignees that compensated TeamHealth or an entity billing on its behalf for medical services in the United States or its territories during the appropriate statute of limitations.
>
> **RICO Class:** All payors and their assignees that compensated TeamHealth or an entity billing on its behalf for medical treatment in the United States or its territories during the appropriate statute of limitations.
>
> **Declaratory Judgment Class:** All payors and their assignees that compensated TeamHealth or an entity billing on its behalf for medical treatment in the United States or its territories at any prior to the filing of the Complaint in this action.

[Doc. 30, ¶ 113]. These class definitions exclude "United States governmental programs[,] including Medicare, Medicaid, CHIP[,] and Tricare" [Doc. 30, ¶ 113.d]. Defendants now move to dismiss Buncombe County's Amended Complaint [Doc. 34], strike the class allegations asserted therein [Doc. 37], and stay discovery pending resolution of the motions [Doc. 40].

## III. MOTION TO DISMISS

### A. Legal Standard

Defendants move to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), which subjects a complaint to dismissal if it fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss, the Court must "construe the complaint in the light most favorable

6

to [the] plaintiff[], accept all the well-pleaded allegations as true, and draw all reasonable inferences in [the] plaintiff['s] favor." *Guetrin v. Michigan*, 912 F.3d 907, 916 (6th Cir. 2019). To survive, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the complaint contains "enough factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

**B.     Matters Outside the Pleadings**

Initially, Defendants liberally cite to matters outside the pleadings to counter the factual allegations in the Amended Complaint: (1) the Medicare Program Prospective Payment System for Hospital Services, 65 Fed. Reg. 18433 (Apr. 7, 2007); (2) CMS's 2021 Part B National Summary Data File; (3) an academic study on the acuity of professional services performed by rural and urban emergency care physicians; and (4) a CMS brochure on NPIs [Doc. 35, pgs. 24-26, 32]. Defendants argue that the Court can consider these and other sources because they are government and publicly available documents [*See* Doc. 35, pgs. 15, 18 n.2, 25 n.5, 26 n.6]. The Court declines to consider these outside materials in deciding Defendants' Motion to Dismiss. *See Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (stating that the facial sufficiency of the complaint must generally be made "without resort to matters outside the pleadings").

**C.     RICO, 18 U.S.C. § 1962(c)**

RICO provides a private cause of action for treble damages and attorney fees to "[a]ny person injured in his business or property by reason of a violation of" one of the four provisions of 18 U.S.C. § 1962. 18 U.S.C. § 1964(c). A substantive RICO claim has four elements:

"(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Defendants' Motion contests the existence of the second and fourth elements [Doc. 35, pgs. 17-32]. The Court addresses each in turn.

1. **Enterprise**

Defendants argue that Buncombe County failed to allege what distinct role each Defendant played to facilitate the overbilling scheme, without which there is no RICO enterprise [Doc. 35, pg. 30]. Defendants argue that the conduct alleged is also indistinct to the ordinary affairs of each business [Doc. 35, pgs. 30-31]. And Defendants argue that the use of their separately incorporated nature is not enough without any indication that their separately incorporated status was used to facilitate the scheme [Doc. 35, pgs. 31-32]. Buncombe County disagrees, arguing that, like the plaintiff in *United Healthcare, Inc.*, the Amended Complaint alleges sufficient facts to establish that Defendants used the separately incorporated nature of their subsidiaries to perpetrate a fraudulent scheme [Doc. 46, pg. 17-18]. Defendants reply that, although the allegations in the Amended Complaint are substantially similar to those the Court found adequate to establish a RICO enterprise in *United HealthCare, Inc.*, both sets of allegations are insufficient [Doc. 47, pgs. 11-12].

A RICO "'enterprise' includes any . . . union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Because only "persons" who conduct the affairs of an "enterprise" through a pattern of racketeering can be liable under RICO, a plaintiff must allege the existence of two distinct entities: (1) a "person" against whom the claim is asserted; and (2) "an 'enterprise' that is not simply the 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). Practically speaking, this means that "a party cannot sue Corporation X in a [c]ivil RICO action in which Corporation X is alleged to be the

enterprise." *Compound Prop. Mgmt., LLC v. Build Realty, Inc.*, 462 F. Supp. 3d 839, 856 (S.D. Ohio 2020). Nor can a parent corporation enter into an enterprise with its subsidiaries. *In re ClassicStar Mare Lease, Litig.*, 727 F.3d 473, 493 (6th Cir. 2013). "However, the distinctness requirement may be satisfied when the parent corporation uses the separately incorporated nature of its subsidiaries to perpetrate a fraudulent scheme." *Id.*

Here, Buncombe County alleges that the RICO enterprise consisted of Team Health Holdings, Team Health Holdings's subsidiaries, and other legal entities controlled by Team Health Holdings to staff emergency departments [*See* Doc. 30, ¶¶ 132, 135-36, 138-39]. The County contends that each Defendant entered into an association-in-fact enterprise with each other and with the medical groups with which the organization affiliates [*See id.*]. The County explains that Team Health Holdings conducts and directs the enterprise but does not bill payors under its own name, instead using HCFS to do so pursuant to policies set by Team Health Holdings and Ameriteam [*See* Doc. 30, ¶¶ 139, 143, 145; *see also id.*, ¶¶ 5, 8, 18-20, 31-34, 37, 40, 44, 46-50, 55]. Further, the County explains how the TeamHealth organization's alleged fraudulent scheme was separate from the rest of the activities in which the enterprise engaged, such as staffing emergency departments in hospitals and providing billing services to unaffiliated providers [*See* Doc. 30, ¶¶ 5, 7, 30-31, 58, 133, 135]. At this stage of the litigation, Buncombe County's allegations suffice to establish that Defendants use the "separately incorporated nature of its subsidiaries to perpetrate a fraudulent scheme." *In re ClassicStare Mare Lease Litig.*, 727 F.3d at 493; *cf. United Healthcare Servs., Inc. v. Team Health Holdings, Inc.*, No. 3:21-CV-00364, 2022 WL 1481171, at *11 (E.D. Tenn. May 10, 2022) (concluding similarly).

9

### 2. Racketeering Activity

Defendants argue that Buncombe County's predicate acts of racketeering failed to comply with Rule 9(b). Defendants argue that the five predicate acts described in the Amended Complaint do not state the basis for the expert's determination that the claims were fraudulently coded [Doc. 35, pgs. 18-19, 28; *see* Doc. 47, pgs. 6-7]. Defendants argue that even if a basis had been articulated, determining the appropriate billing code requires the application of clinical judgment to multiple factors on which reasonable minds can disagree [Doc. 35, pgs. 21-23]. Defendants argue that the County cannot overcome this deficiency with statistical correlation and unproven allegations from other cases [Doc. 35, pgs. 23-26; *see* Doc. 47, pgs. 8-9]. And Defendants argue that there are insufficient facts from which their scienter can be inferred [Doc. 35, pg. 28; *see* Doc. 47, pgs. 9-10].

Buncombe County responds that the allegations in the Amended Complaint describe the fraudulent scheme and predicate acts of racketeering with sufficient particularity to survive dismissal [Doc. 46, pgs. 9-12, 16-17]. The County argues that it is not required to plead every detail of their coding expert's opinion, which can be addressed through expert discovery [Doc. 46, pg. 13]. The County argues that the need for technical expertise to detect fraud does not make Defendants' conduct less fraudulent [Doc. 46, pgs. 13-14]. And the County argues that it can permissibly support its claims with allegations of its own statistical analyses and cite to cases with overlapping facts [Doc. 46, pgs. 15-16].

Mail and wire fraud can serve as predicate acts of racketeering activity. 18 U.S.C. § 1961(1). Both share the same elements: "(1) a scheme or artifice to defraud; (2) use of the mails or interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property." *Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 264 (6th Cir.

2014). "A scheme to defraud includes any plan or course of action by which someone uses false, deceptive, or fraudulent pretenses, representations, or promises to deprive someone else of money." *United States v. Jamieson*, 427 F.3d 394, 402 (6th Cir. 2005). "This means not only that a defendant must knowingly make a material misrepresentation or knowingly omit a material fact, but also that the misrepresentation or omission must have the purpose of inducing the victim of the fraud to part with property or undertake some action that he would not otherwise do absent the misrepresentation or omission." *United States v. DeSantis*, 134 F.3d 760, 764 (6th Cir. 1998). And the plaintiff must establish that the defendant acted with either a specific intent to defraud or with recklessness with respect to the potentially misleading information. *Id*.

Fraud-based RICO claims are subject to the heightened pleading requirements of Rule 9(b). *Heinrich v. Waiting Angels Adoption Servs.*, 668 F.3d 393, 404 (6th Cir. 2012). A plaintiff "(1) must specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id*. (internal quotation marks omitted). However, the Sixth Circuit reads Rule 9(b) "liberally" because of the "influence of Rule 8, which requires a short and plain statement of the claim." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999) (internal quotation marks omitted).

Here, the Amended Complaint sufficiently alleges predicate RICO acts with enough particularity to avoid dismissal. Buncombe County's RICO claim is predicated on the submission of claims with inflated CPT codes. Although Defendants argue that which CPT code is submitted is a matter of opinion, "opinions are not, and have never been, completely insulated from scrutiny. At the very least, opinions may trigger liability for fraud when they are not honestly held by their maker, or when the speaker knows of facts that are fundamentally incompatible with is opinion."

11

*United States v. Paulus*, 894 F.3d 267, 276 (6th Cir. 2018). It is that latter point which forms the basis for Plaintiff's theory of liability.

Buncombe County also alleged sufficient facts to apprise Defendants of the nature of the fraudulent claims, when they were made, and how those claims were fraudulent in Defendants' overbilling scheme [Doc. 30, ¶¶ 147-53]. Specifically, the County alleges that Defendants used the wires and mail to submit fraudulent claims, coordinate their unlawful activities, and obtain payment for their fraudulent claims [*See* Doc. 30, ¶¶ 1-3, 6, 12, 34-37, 46-54, 58, 77-81, 84-91, 107, 159]. These allegations are sufficient to survive both Rule 9(b)'s heightened pleading requirement and the pleading requirements for mail and wire fraud predicates under RICO [Fed.R.Civ.P. 9(b); *see Iqbal*, 556 U.S. 678]. Accordingly, Defendants' Motion to Dismiss is **DENIED** with respect to the County's substantive RICO claim.

D.     **Conspiracy to Violate RICO**

Defendants argue that Buncombe County's failure to plead a plausible RICO claim dooms any RICO conspiracy claim [Doc. 35, pgs. 32-33]. Defendants further argue that the County failed to plead facts from which to plausibly infer an agreement between them to commit wire and mail fraud [Doc. 35, pg. 33]. The County disagrees [Doc. 46, pgs. 18-19].

A RICO conspiracy claim shares the same elements as a substantive claim, along with "the existence of an agreement to violate the substantive RICO provision." *Heinrich*, 668 F.3d at 411. "An agreement can be shown if the defendant objectively manifested an agreement to participated directly or indirectly in the affairs of an enterprise through the commission of two or more predicate crimes." *Id.*

Here, Buncombe County plausibly pleaded a RICO conspiracy claim. As discussed above, the County plausibly alleges the disputed elements of a substantive RICO claim. The County

12

further alleges that Defendants each conspired to profit from a pattern of racketeering activity involving the TeamHealth organization. And their objective manifestation of assent can be inferred from the same facts the Court recognized plausibly allege predicate acts of racketeering. Defendants' Motion to Dismiss is therefore **DENIED** with respect to the County's RICO conspiracy claim.

### E. Unjust Enrichment

Defendants argue that, as a logical extension of Buncombe County's failure to satisfy Rule 9(b), the County failed to plead a plausible unjust enrichment claim [Doc. 35, pgs. 33-34; Doc. 47, pgs. 12-14]. Defendants contend that this conclusion would be the same regardless of the whether North Carolina or Tennessee law applied [*Id.*]. Buncombe County agrees that the plausibly of its unjust enrichment claim is unaffected by the application of either North Carolina or Tennessee law [Doc. 46, pg. 20]. The County argues that unjust enrichment does not require fraud, scienter, or reliance [*Id.*]. The County alternatively argues that the factual allegations in the Amended Complaint satisfy Rule 9(b) [*Id.*].

As discussed above in connection with Buncombe County's RICO claim, the County has pleaded sufficiently particularized facts to satisfy Rule 9(b). The Court need not therefore consider at this stage which state's law governs the County's unjust enrichment claim or whether such a claim would be subject to Rule 9(b). Defendants' Motion to Dismiss is **DENIED** with respect to the County's unjust enrichment claim.

### F. Declaratory Judgment

Defendants last argue that Buncombe County lacks standing to assert a claim under the Declaratory Judgment Act because the facts alleged do not establish a present likelihood of future harm [Doc. 35, pgs. 35-36; Doc. 47, pgs. 14-15]. Defendants alternatively argue (assuming none

13

Case 3:22-cv-00420-DCLC-DCP   Document 50   Filed 01/17/24   Page 13 of 18   PageID #: 852

other claim survived) that the Court should withhold its discretion to exercise jurisdiction over the declaratory judgment claim [Doc. 35, pgs. 37-38; Doc. 47, pgs. 15-16]. Buncombe County responds that it has standing because it is almost certain it will continue to pay invoices for medical services upcoded by Defendants [Doc. 46, pgs. 21-22]. And the County argues that the Court should exercise jurisdiction over the claim [Doc. 46, pgs. 22-25].

### 1. Standing

The Declaratory Judgment act authorizes federal courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A threshold requirement for declaratory relief is that there be an "actual controversy," which is coextensive with the "case or controversy" requirement of Article III. 28 U.S.C. § 2201(a); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). The party seeking declaratory relief must therefore establish that he "suffered an injury-in-fact, fairly traceable to the defendant[s'] allegedly unlawful conduct, and likely to be redressed by the requested relief." *National Rifle Assoc. of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997). Defendants focus on existence of an injury-in-fact and redressable harm.

Buncombe County pleaded sufficient facts to establish standing under the Declaratory Judgment Act. The County alleges that Defendants conduct an ongoing racketeering enterprise by which they cause inflated billing codes to be submitted to insurance payors [*See* Doc. 30, ¶¶ 12, 14-15, 132, 156, 163]. The timeframe of allegedly fraudulent claims extends from at least 2017 to as recent as April 2022 [Doc. 30, ¶¶ 14, 78-80, 84, 86-88, 90]. This includes claims submitted by providers staffed by Defendants through the date of the Amended Complaint [Doc. 30, ¶ 70]. And the alleged overbilling scheme is built-in to the way Defendants do business [Doc. 30, ¶ 156]. Altogether, the Court finds these facts sufficient at the pleading stage to establish a "substantial

14

risk" that the County will suffer future harm because of Defendants' alleged scheme. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013). And the Court finds that the alleged harm is redressable through a declaratory judgment. *Cf. State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536, 562 (D. Md. 2019).

### 2. Discretion

The Supreme Court has explained that the Declaratory Judgment Act is procedural in nature, *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950); thus, there must be an independent basis of subject matter jurisdiction for the Court to consider a claim for declaratory relief under the statute, *Haydon v. MediaOne of Se. Mich., Inc.*, 327 F.3d 466, 470 (6th Cir. 2003). Even when subject matter jurisdiction exists, whether to consider a claim for declaratory relief is discretionary. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).

Because Buncombe County's other claims survive, the Court retains federal question jurisdiction over the lawsuit. The Court ordinarily would then have to determine whether to exercise its discretion over the County's declaratory judgment claim based on five factors. *Byler v. Air Methods Corp.*, 823 F. App'x 356, 365 (6th Cir. 2020); *see Grand Trunk W. R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). But when, as here, the plaintiff "seeks relief in addition to a declaratory judgment, such as damages or injunctive relief, both of which a court must address, then the entire benefit derived from exercising discretion not to grant declaratory relief is frustrated, and a stay or dismissal would not save any judicial resources." *Adrian Energy Assocs. v. Michigan Pub. Serv. Comm'n*, 481 F.3d 414, 422 (6th Cir. 2007). Defendants' Motion to Dismiss is therefore **DENIED** with respect to Buncombe County's claim for declaratory relief.

### IV. MOTION TO STRIKE

Defendants separately move to strike the class allegations in the Amended Complaint [Doc. 37]. Generally, Defendants argue that Buncombe County cannot establish the commonality and typicality requirements of Rule 23(a) [Doc. 38, pgs. 15-24]. And Defendants argue that the County cannot maintain a class under Rule 23(b)(1), (b)(2), (b)(3), or (c)(4) [Doc. 38, pgs. 24-40]. Buncombe County responds that Defendants' Motion to Strike is premature at this stage in the case and that none of Defendants argument establish that class certification is impossible [*See* Doc. 45, pgs. 8-23]. Defendants reply that the Court should not "delay the inevitable" and reiterates that the County failed to satisfy the requirements of Rule 23(a) and (b). [*See* Doc. 49, pgs. 5-14].

Federal courts are required to determine whether to certify a class action "[a]t an early practicable time after a person sues or is sued as a class representative." Fed.R.Civ.P. 23(c)(1)(A). Although disfavored, a motion to strike is a permissible procedural vehicle by which the defendant may attack class allegations at the pleading stage. *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011). The reason why it is disfavored is because courts typically lack the proper foundation with which to conduct the "rigorous" class-certification analysis at the pleading stage. *In re American Med. Sys.*, 75 F.3d 1069, 1078-79 (6th Cir. 1996) (internal quotation marks omitted). Thus, the Sixth Court instructs that courts "should defer decision on certification pending discovery if the existing record is inadequate for resolving the relevant issue." *Id.* at 1086. The one exception is when "it is clear from the face of the complaint that a proposed class cannot satisfy the requirements of Rule 23." *Bearden v. Honeywell Int'l, Inc.*, 720 F. Supp.2d 932, 942 (M.D. Tenn. 2010). This occurs when there is a facial defect that cannot be cured by discovery. *See Pilgrim*, 660 F.3d at 949; *see also Jones v. Lubrizol Advanced Materials, Inc.*, 583 F. Supp. 3d 1045, 1055 (N.D. Ohio 2022).

16

The Court declines to strike Buncombe County's class allegations prior to a motion to certify. A few of Defendants arguments suffice to illustrate why. Although Defendants argue at length why the County cannot satisfy the commonality and typicality requirements of Rule 23(a), both "generally involve[] considerations that are enmeshed in the factual and legal issues comprising [the County's] cause of action." *General Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (internal quotation marks omitted). Those are issues "more prudently reserved for a fully briefed class certification motion rather than in the context of a motion to strike claims at the pleading stage." *Glass v. Tradesman Int'l, LLC*, 505 F. Supp. 3d 747, 765 (N.D. Ohio 2020). Defendants further argue that the County cannot maintain a class under Rule 23(b)(3) for its unjust enrichment claim because individual questions about each patient encounter and which state's law would predominate. Although discovery may ultimately show that it will be impracticable to proceed with a class-wide unjust enrichment claim, it is at least possible that common issues will predominate based on the County's common allegation that Defendants had a uniform policy of overbilling and that evidence of that policy is in Defendants' sole possession [Doc. 30, ¶ 93; *cf. Bright v. Brookdale Senior Living*, 2021 WL 6496799, at *19 (M.D. Tenn. Mar 12, 2021)]. And although a nationwide class raises legitimate choice of law issues, that issue is best addressed in the context of a motion to certify. *Fishon v. Mars Petcare US, Inc.*, 501 F. Supp. 3d 555, 576 (M.D. Tenn. 2020). Defendants' Motion to Strike [Doc. 37] is therefore **DENIED**.

V. **MOTION TO STAY**

Defendants also move to stay discovery pending resolution of their Motion to Dismiss and Motion to Strike [Doc. 40]. Because this Order denies both motions, Defendants' Motion to Stay [Doc. 40] is **DENIED AS MOOT**.

17

Case 3:22-cv-00420-DCLC-DCP Document 50 Filed 01/17/24 Page 17 of 18 PageID #: 856

## VI. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss [Doc. 34], Motion to Strike [Doc. 37] and Motion to Stay [Doc. 40] are **DENIED**.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge